**CITY OF CORPUS CHRISTI,**
**Appellant,**

v.

**George Kines TAYLOR and Sandra G. Taylor, as Independent Coexecutors of the Estate of Fay K. Taylor, Jennifer Taylor Labrie, and George Kelley Taylor, Appellees.**

No. 13–02–077–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 12, 2004.

Carol Estes Bray, Asst. City Atty., Corpus Christi, for Appellant.

Andrew M. Greenwell, Harris & Greenwell, Corpus Christi, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and J. BONNER DORSEY.[1]

## OPINION

Opinion by Justice RODRIGUEZ.

Appellees, George Kines Taylor and Sandra G. Taylor, as independent coexecutors of the estate of Fay K. Taylor,[2] Jennifer Taylor Labrie, and George Kelley Taylor (Taylors), sued appellant, the City of Corpus Christi (City), seeking a declaration that restrictions against building on the real property at issue were void or unenforceable. The Taylors also sought money damages. After a bench trial, the court entered judgment in favor of the Taylors, holding the contract between George and Fay Taylor and the City, signed November 27, 1974, and the deed restrictions in the contract were terminated. The judgment released the Taylors from the restrictions. The trial court awarded attorney's fees to the Taylors pursuant to the Declaratory Judgment Act. The court did not award damages.

By twelve issues, the City challenges the trial court's findings of fact and conclusions of law contending the evidence is factually and legally insufficient to support the judgment. Specifically, the City complains that the court erred in its declaratory judgment rulings because: (1) the contract and restrictions are not illegal and

1. Retired Justice J. Bonner Dorsey, who had been assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to section 74.003 of the government code, and whose assignment expired on August 31, 2003, did not participate in this decision. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

2. Fay K. Taylor, also known as Faye Taylor, will be referred to as Fay Taylor throughout the opinion.

void; (2) the contract does not contemplate a continuing performance which is indefinite in duration and is not terminable at will; (3) there is no violation of public policy against alienation, and the property is usable; (4) the City did not violate article 5421(c)–12, section 1 of the revised civil statutes by selling or exchanging land without public notice and public sale; (5) there was no anticipated breach, deceit, fraud, fraudulent inducement or unconscionable conduct; (6) there is no entitlement to attorney's fees; (7) the affirmative defenses of limitations, sovereign immunity, estoppel, laches, and estoppel by deed or contract preclude recovery; (8) the acts of the City are validated by statute; (9) it is not a taking or an unjust enrichment claim; and (10) the restrictive covenants cannot be unilaterally terminated. By one cross-issue, the Taylors assert the trial court should have awarded damages. We affirm.

## I. Background

In the early 1970s, as part of a federally-funded program aimed at having and maintaining a series of open spaces and parks along Ocean Drive, the City sought to obtain George and Fay Taylor's undeveloped property bordering Corpus Christi Bay (Ocean Drive property). This property was to become part of an area now known as Ropes Park. George and Fay Taylor opposed the City's efforts to acquire their property. After three years of unsuccessful negotiations, the City began condemnation proceedings on the Ocean Drive property. The proceedings were hotly contested. In December 1973, following a hearing on the matter, appointed commissioners awarded the Taylors a total $39,275.00 for the Ocean Drive property. Both the City and George and Fay Taylor appealed the commissioners' award. A jury trial resulted in a $27,600.00 judgment to George and Fay Taylor for the property. They appealed that judgment.

In November 1974, George and Fay Taylor and the City entered into an agreement [3] (1974 Agreement) that settled the condemnation proceeding. The 1974 Agreement was approved by the Corpus Christi City Council. Pursuant to the 1974 Agreement the following documents were executed and filed of record: (1) a document setting out covenants restricting building and certain vegetation on the Ocean Drive property; (2) a deed conveying to the City a one-half interest in property described as two lots on Water Street, presently the site of the Selena Auditorium (Water Street property); and (3) a quitclaim deed from the City to George and Fay Taylor for the Ocean Drive property.

The document restricting building and vegetation on the Ocean Drive property provided "[n]o building, fence or other structure shall be erected, placed or permitted to remain on said property," and "vegetation ... will be planted and maintained in such a manner that the driver of an automobile ... will be able to view Corpus Christi Bay over at least fifty (50%) of the property's Ocean Drive frontage." It also stated that,

[t]hese restrictions and covenants are hereby declared to be covenants running with the land forever and shall be binding upon all persons acquiring the above-described property whether by descent, devise, purchase or otherwise, and any person by the acceptance of title to said property or any part thereof shall thereby agree and covenant to abide by and fully perform the foregoing restrictions and covenants.

This restrictive covenant document further provided that if any person violated any of

3. We use agreement and contract interchangeably throughout this opinion.

the restrictions and covenants, the City could "prosecute proceedings at law or in equity against the person violating or attempting to violate any such restriction and covenant. . . ."

The second document required by the 1974 Agreement was a deed conveying a one-half interest in the Water Street property from George and Fay Taylor to the City. This conveyance was subject to the covenant that the City "shall never file or prosecute any suit to condemn" the Ocean Drive property. The conveyance also provided that should the City violate or not observe this covenant, the City agreed to pay George and Fay Taylor, "their heirs or assigns, in cash, the same amount paid to acquire the other one half (1/2) interest in" the Water Street property. The third document was a quitclaim deed from the City to George and Fay Taylor for the Ocean Drive property.

After the parties entered into the 1974 Agreement, the appeal of the condemnation proceeding was dismissed. The Ocean Drive property was taken out of the park project and was never condemned.

On August 20, 1997, Sandra G. Taylor and George Kines Taylor, independent co-executors of the estate of Fay Taylor, signed an affidavit terminating and releasing restrictions on the Ocean Drive property. In December 1998, the Taylors filed their original petition and request for declaratory relief. The trial court's judgment terminated the 1974 Agreement and the restrictions contained therein, and released the Taylors from the restrictions. The trial court entered findings of fact and conclusions of law and later, at the request of the Taylors and the City, entered additional findings of fact and conclusions of law. The City appeals from the trial court's judgment.

## II. Standard of Review

### A. Findings of Fact

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Taiwan Shrimp Farm Vill. Ass'n v. U.S.A. Shrimp Farm Dev., Inc.,* 915 S.W.2d 61, 70 (Tex.App.-Corpus Christi 1996, writ denied). Findings of fact are not, however, conclusive when a complete reporter's record appears in the record, as in this case. *Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). When challenged, such trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence by the same standards applied when reviewing evidence supporting jury findings. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina,* 881 S.W.2d at 297; *Taiwan Shrimp Farm Vill.,* 915 S.W.2d at 70; *see In re Doe,* 19 S.W.3d 249, 253 (Tex.2000). If a reporter's record is filed, unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex. 1986).

#### 1. Legal Sufficiency

Legal sufficiency issues are called "no evidence" issues or "matter of law" issues, depending upon whether the complaining party had the burden of proof. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275 (Tex.App.-Amarillo 1988, writ denied). Challenges to the legal sufficiency of the evidence must be sustained if the record reflects one of the following:

(1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving

weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of [a] vital fact.

*Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). Under a legal-sufficiency review we must disregard all evidence and inferences contrary to the findings in the case. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002).

### 2. Factual Sufficiency

When reviewing a challenge to the factual sufficiency of the evidence, we consider all of the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989) (per curiam). "Factual sufficiency [issues] are designated as 'insufficient evidence [issues]' or 'great weight and preponderance evidence [issues],' depending upon whether the complaining party had the burden of proof." *Maxus,* 766 S.W.2d at 275; *see Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (per curiam) (when complaining party did bear burden of proof at trial, he must demonstrate on appeal that adverse finding is against great weight and preponderance of evidence); *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983) (if complaining party did not have burden of proof at trial, must demonstrate there is insufficient evidence to support adverse finding); *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied) (same).

### B. Conclusions of Law

The trial court's conclusions of law are not binding upon an appellate court; instead, the appellate court is free to draw its own legal conclusions. *Aguero v. Ramirez,* 70 S.W.3d 372, 373 (Tex.App.-Corpus Christi 2002, pet. denied). We review the trial court's conclusions of law de novo to determine whether the trial court correctly drew the legal conclusions from the facts. *State v. Heal,* 917 S.W.2d 6, 9 (Tex. 1996); *Aguero,* 70 S.W.3d at 373; *Dallas Morning News v. Bd. of Trs.,* 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied).

Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Mack v. Landry,* 22 S.W.3d 524, 528 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Spiller v. Spiller,* 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied). Furthermore, correct conclusions of law will not require reversal if the controlling finding of facts will support a correct legal theory. *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de . C.V.,* 49 S.W.3d 347, 351 (Tex. 2001); *Aguero,* 70 S.W.3d at 373.

### III. Legality of 1974 Agreement

By its first issue, the City contends the evidence is legally and factually insufficient to prove that the 1974 Agreement was illegal. The City specifically complains of the following findings of fact:

4. Under the terms of the Contract between the City ... and George and Fay Taylor dated November 27, 1974, the City agreed to "never file or prosecute any suit to condemn the [Ocean Drive] Property;"

5. In carrying out the Contract, the parties contemporaneously executed a restrictive covenant in connection with the [Ocean Drive] Property ...; a conveyance of their undivided 1/2 interest in [the Water Street property], subject to the proviso that the [Ocean Drive] Property would

never be condemned or subject to condemnation; and finally, a Quitclaim Deed executed by the City Manager, whereby the City quitclaimed all right, title and interest to the [Ocean Drive] Property to [George and Fay Taylor]; and

\* \* \*

8. There was no consideration for the 1974 Agreement between the City of Corpus Christi and George [and Fay]Taylor....

The City further asserts that the following conclusions of law were made in error:

3. [Same as Finding 4 above];
4. [Same as Finding 5 above]; and

\* \* \*

■ 5. Under the Contract entered into between the City ..., a municipal corporation, and George Taylor and wife, Fay Taylor, which was incorporated into and adopted by virtue of Ordinance No. 12304 dated October 9, 1974, the provision *never to file or prosecute any suit to condemn the [Ocean Drive] property* is a restriction against free exercise of governmental powers.[4]

■ A city may not enter into a contractual provision which limits its free exercise of governmental and police powers. *See Clear Lake City Water Auth. v. Clear Lake Utils. Co.,* 549 S.W.2d 385, 391 (Tex.

1977); *Banker v. Jefferson County Water Control and Improvement Dist. No. One,* 277 S.W.2d 130, 134 (Tex.Civ.App.-Beaumont 1955, writ ref'd n.r.e.). The power of eminent domain or condemnation is a governmental function which cannot be delegated. *See Burch v. City of San Antonio,* 518 S.W.2d 540, 545 (Tex.1975). A contract restricting a city's freedom to choose when to initiate condemnation proceedings is a contract in derogation of such power. *See Clear Lake,* 549 S.W.2d at 391. Therefore, such contractual restriction is contrary to public policy and, thus, illegal and void. *Banker,* 277 S.W.2d at 133–34.

The City agrees that it cannot legally agree never to condemn because such is in derogation of its governmental powers. Nonetheless, the City argues that all provisions of the 1974 Agreement should be read together. *See Baty v. Protech Ins. Agency,* 63 S.W.3d 841, 848 ((Tex.App.-Houston [14th Dist.] 2001, pet. denied) courts to construe particular language by reading contract as whole, not by isolating certain phrases); *Hofland v. Firemans Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex. App.-Corpus Christi 1995, no writ) (courts seek to harmonize and give effect to all contract provisions so that none are meaningless). Specifically, the City urges this Court to read and interpret the restriction on the City's exercise of eminent domain in light of the following clause:

In case of and upon any violation or nonobservance of this section [restricting

---

4. The City also challenges the following additional conclusions of law:
 9. [The City's] defenses are not applicable, since the October 9, 1974 Ordinance which authorized the November 27, 1974 Contract is contrary to public policy and statute, and thus is invalid and void; and
 10. [The City's]defenses are not applicable, since the November 27, 1974 Contract, being of indefinite duration and terminable at will, was terminated.

The City does not, however, fully present clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. *See* Tex.R.App. P. 38.1(h). Therefore, we will not address the City's challenge to the court's additional conclusions of law 9 and 10 in this first issue. We will, however, address defenses relevant to the disposition of this appeal later in the opinion.

condemnation], [the] City agrees to pay [George Taylor and Fay Taylor], their heirs or assigns, in cash, the same amount paid to acquire the other one half (1/2) interest in [the Water Street property], whether said property be acquired by negotiated sale or by condemnation.[5]

The City contends this "payment" clause acts as a qualifier to the restriction not to condemn. It argues that, as a matter of law, legal consideration was exchanged because the contract and provision referenced and the ordinance adopting them were not illegal.

The City relies on *Wicks v. Comves*, 110 Tex. 532, 221 S.W. 938, 939 (1920), for the proposition that when certain portions of a contract are invalid, the court is to ignore them if possible, and enforce as much of the remainder of the contract as is lawful. *See id.* at 939. In *Wicks*, the lessor agreed to perform two acts: first, to lease a fruit stand on and over the sidewalk for stipulated monthly rentals; and second, to lease the stands and fixtures inside for stipulated monthly rentals if the use of the sidewalk was terminated because it was determined to be illegal. *Id.* at 938. The contract in *Wicks* did not contemplate doing anything that violated the law, but rather it provided for doing only that which was lawful. *Id.* The two acts in *Wicks* could be readily separated, one to be performed for a separate consideration upon the failure of another found to be illegal. *Id.* at 939.

In the present case, the 1974 Agreement and supporting documents did not set forth alternative, severable provisions. The City agreed not to condemn the Ocean Drive property, but if it did condemn the property, the City agreed to pay a predetermined amount of money to George and Fay Taylor, their heirs or assigns. We cannot conclude these acts are analogous to the separate and distinct acts described in *Wicks*. Only when the City violated or refused to abide by its agreement not to condemn would the payment clause become effective.

Moreover, unlike the lessor in *Wicks*, the City agreed to perform an illegal act. The 1974 Agreement provided for doing something that was unlawful; the act of never condemning the Ocean Drive property. Having concluded the first clause which restricts the City's exercise of eminent domain is illegal, and thus, void, we must conclude the second clause has no effect. *See Ashley v. Edwards*, 626 S.W.2d 107, 111 (Tex.App.-Houston [14th Dist.] 1981, no writ) (if contract is unambiguous on its face, court cannot depart from terms of contract to make legal what parties have made unlawful). Therefore, this argument fails.

The City also argues that even if the provision not to condemn is held to be invalid, such does not invalidate the remaining provisions. The City urges that the remaining contractual provisions, including the conveyance of one-half interest in the Water Street property to the City, are separable and independent contractual provisions and should be upheld. *See, e.g., Clear Lake*, 549 S.W.2d at 390–92 (court did not invalidate entire contract, but construed remaining portions of contract in such a way so as to make it legal); *Banker*, 277 S.W.2d at 134 (court held exclusivity provision invalid, but did not provide district had to repay developer). We find it unnecessary, however, to reach this ar-

---

5. We note that although this language is contained in the conveyance of the Water Street property from George and Fay Taylor to the City, it is not included in either the document restricting building on the Ocean Drive property or the quitclaim deed. The language does, however, appear in the 1974 Agreement to which the three documents were attached.

gument. The judgment in this case declared the 1974 Agreement terminated. It also terminated the deed restrictions on the Ocean Drive property and released the Taylors from those restrictions. It did nothing more. Thus, arguments related to other contractual provisions are not before us in this appeal.

■ Disregarding all evidence and inferences contrary to the findings, we conclude more than a scintilla of evidence exists to support findings of fact 4, 5, and 8, that the City agreed to "never file or prosecute any suit to condemn the [Ocean Drive] Property," that the Water Street property was conveyed "subject to the proviso that the [Ocean Drive] Property would never be condemned or subject to condemnation," and that there was no legal consideration for the agreement. Thus, the City's legal sufficiency challenge fails as to these findings. *See Maxus*, 766 S.W.2d at 275; *Formosa Plastics Corp., USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1995). Furthermore, reviewing the entire record, we conclude there is sufficient evidence to support the adverse findings; thus, the City's factual sufficiency challenge also fails. *Maxus*, 766 S.W.2d at 275. Moreover, evaluating the trial court's conclusions of law 3 and 4 which parallel findings of fact 4 and 5, we conclude the trial court correctly drew the legal conclusions from the facts. *See Dallas Morning News*, 861 S.W.2d at 536. We also conclude that conclusion of law 5, which provides the provision never to file or prosecute any suit to condemn the Ocean Drive property, is a restriction against free exercise of governmental powers and is not erroneous as a matter of law. *See Stable Energy*, 999 S.W.2d at

547. Accordingly, the City's first issue is overruled.

Having concluded the covenant restricting the City's power of eminent domain is contrary to public policy and void, and, thus, illegal, *see Banker*, 277 S.W.2d at 133–34, we now address whether the 1974 Agreement was continuous and terminable at will.

### IV. Continuous Performance Terminable at Will

By its second issue, the City challenges conclusion of law 6 which provides that "[t]he Contract entered into between the City . . . and George Taylor and wife, Fay Taylor . . . contemplates a continuing performance which is indefinite in duration." [6] The City argues that, as a matter of law, the contract does not contemplate a continuing performance, is not indefinite in duration, and is not terminable at will. It contends, as a matter of law, the contract is not executory but is a completed contract: the deeds were signed, the covenant was placed, and the agreement did not include further actions on the part of the Taylors. The City thus contends the Taylors had no basis to unilaterally terminate the contract and restrictions.

The City cites authority for several general propositions of law related to restrictions and covenants. *See Munson v. Milton*, 948 S.W.2d 813, 817 (Tex.App.-San Antonio 1997, pet. denied) (property owners permitted to create binding permanent restrictions on property if the restrictions are confined to a lawful purpose and are reasonable); *Cornett v. City of Houston*, 404 S.W.2d 602, 605 (Tex.Civ.App.-Hous-

---

**6.** The City again contends the trial court erred in concluding the City's "defenses are not applicable, since the November 27, 1974 Contract, being of indefinite duration and terminable at will, was terminated." Because

this argument is inadequately briefed we will not address it at this time. *See* Tex.R.App. P. 38.1(h). As set out earlier, we will, however, address defenses relevant to the disposition of this appeal later in the opinion.

ton 1964, no writ) (covenants and restrictions are not violation of rule against perpetuities because rule merely relates to remote vesting of estate); *Selected Lands v. Speich,* 702 S.W.2d 197, 198 (Tex.Civ. App.-Houston [14th Dist.] 1985, no writ) (restrictive covenants created by grant, as covenant running with land; mutual agreement; implication, as reciprocal negative easement; and a general plan of development, as an equitable servitude); *Thomson v. Dozier,* 168 S.W.2d 319, 322 (Tex.Civ. App.-El Paso 1942, writ ref'd w.o.m.) (covenant with no duration stated does not impair its validity); *Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987) (covenant runs with land when (1) it touches and concerns land, (2) it relates to thing in existence or specifically bind parties and assigns, (3) it is intended by original parties to run with land, and (4) successor to burden has notice). Although the City sets out these general propositions of law, it does not provide clear and concise arguments with appropriate citations to authorities and to the record for its contentions. *See* TEX.R.APP. P. 38.1(h).

Moreover, in this instance, neither the 1974 Agreement nor the supporting documentation sets out a duration for either the restrictions on the land or the City's covenant not to condemn. Furthermore, while the filing of the restrictions had been completed, the restrictions imposed a continuing duty on the Taylors not to erect buildings, fences, or other structures or to permit them to remain. Similarly, the restrictions imposed a continuing commitment on the Taylors to maintain vegetation within certain limits. The agreement was entered into in 1974. Trial testimony established that the restrictive covenants were still being followed and that the Taylors continued to pay taxes on the property. Moreover, the agreement also set out the City's continuing obligation not to con-

demn, an obligation we have determined to be unlawful and which is not supported by the proposition of law cited by the City in *Munson.* *See Munson,* 948 S.W.2d at 817 (binding permanent restrictions permitted if restrictions are confined to lawful purpose and are reasonable).

■ Thus, evaluating the trial court's conclusion of law 6 de novo, we conclude the trial court correctly drew, from the facts of the case, its legal conclusion that the contract contemplates a continuing performance which is indefinite in duration. *See Dallas Morning News,* 861 S.W.2d at 536. Its conclusion is not erroneous as a matter of law. *See Stable Energy,* 999 S.W.2d at 547.

■ Having so concluded, the controlling rule is that "contracts which contemplate continuing performance (or successive performances) and which are indefinite in duration can be terminated at the will of either party." *Clear Lake,* 549 S.W.2d at 390. While this rule is controlling in many cases, we are nonetheless mindful that restrictions of indefinite duration are arguably subject to the principle that a reasonable duration will be implied during which time the agreement is not terminable at will. *See id.* at 391. The City appears to be asking this Court to follow this principle and determine that a reasonable duration should have been implied and that the restrictions and the agreement should not have been terminated during that time. *See Clear Lake,* 549 S.W.2d at 391; *Banker,* 277 S.W.2d at 134.

In *Clear Lake,* however, the supreme court explained that a reasonable term cannot always be implied. *Clear Lake,* 549 S.W.2d at 391–92. The *Clear Lake* Court concluded that a water district simply cannot restrict its free exercise of governmental powers for *any reasonable term* be-

cause it would inhibit its control over a governmental function. *Id.; see Fidelity Land & Trust Co. of Tex. v. City of West Univ. Place*, 496 S.W.2d 116, 117–18 (Tex. Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (court denied relief holding agreement operated to inhibit municipality in its discretionary control over governmental function); *Banker*, 277 S.W.2d at 134 (water district could not bargain away governmental power to determine to whom and under what conditions it would sell surplus water). We conclude the same reasoning applies in this instance.

As part of the 1974 Agreement, the City agreed not to condemn the Ocean Drive property. George and Fay Taylor agreed to building and vegetation restrictions on the Ocean Drive property and, in turn, the City agreed not to condemn the same property. This had the effect of potentially controlling the City in the exercise of its governmental powers. *See Clear Lake*, 549 S.W.2d at 391. The City cannot, by contract or otherwise, bind itself in such a way as to restrict the free exercise of its power of eminent domain or condemnation, even for a reasonable time. *See Clear Lake*, 549 S.W.2d at 391; *Burch*, 518 S.W.2d at 545. Thus, it simply cannot be implied that the parties agreed to be bound for a reasonable time. *Id.* The City could not by contract or otherwise, bind itself in such a way as to restrict its exercise of these governmental powers, nor could it abdicate its governmental functions, even for a reasonable time. *See id.* Unless the 1974 Agreement is treated as

terminable at will, it would have the impermissible effect of being void ab initio—a result neither party could have intended. *See id.* Therefore, if the agreement is not void ab initio because it illegally restricts the City's power of eminent domain, then it must be construed as terminable at the will *of either party. See id.* By releasing and terminating their reciprocal obligations, the Taylors, in effect, terminated the 1974 Agreement. Accordingly, the City's second issue is overruled.

## V. Affidavit

The City, by its twelfth issue, contends that the affidavit filed by the Taylors that terminated and released the building and vegetation restrictions on the Ocean Drive property was void and invalid. The City argues that the contract is binding, the restrictions are valid, and the Taylors have no right to unilaterally terminate the restrictions or to rescind any portion of the contract. This issue challenges: (1) conclusions of law 8 and 9 which terminated the restrictions and released the Taylors from the restrictions; and (2) additional conclusion of law 8 wherein the court concluded the City was not entitled to its request for declaratory judgment.[7]

As set out above, however, we have concluded the City's covenant not to condemn the Ocean Drive property is not lawful. We have also determined the 1974 Agreement contemplated continuous performance of indefinite duration that was terminable at the will of either party.[8] The

---

7. Additionally in its twelfth issue the City challenges the trial court's additional finding of fact 7 that the City had not established a continuing claim to an easement and its additional conclusion of law 11 concluding the Taylors had established that there were no easements on the property. The City also challenges the court's additional finding of fact 8 that the City had not established the property was not useable because it had been

divided from the portion across the street by sale. Because of the disposition of the appeal on other grounds, it is not necessary to address the City's arguments related to these findings and conclusions. *See* TEX.R.APP. P. 47.1.

8. The City also argues that nothing in the documents shows the 1974 Agreement and the restrictions could have been terminated.

Taylors filed a valid affidavit that terminated and released their reciprocal obligations; obligations that restricted building and certain vegetation growth on the Ocean Drive property. The filing of the affidavit effectively terminated the 1974 Agreement.

We conclude the trial court correctly drew legal conclusions 8, 9 and additional conclusion of law 8 from the facts. *See Dallas Morning News*, 861 S.W.2d at 536. The challenged conclusions of law are not erroneous as a matter of law. *See Stable Energy*, 999 S.W.2d at 547. We overrule the City's twelfth issue.

## VI. Validation by Statute

By its tenth issue, the City contends the court erred in awarding judgment for the Taylors because, as a matter of law, all acts of the City were validated by statute. For this reason, the City complains that conclusion of law 5 was made in error. Conclusion 5 sets out the City's "claim of validation by statute is not applicable in this case, in view of the evidence and the law."

■■■■■ The purpose of validation acts is to cure non-constitutional statutory irregularities. *See Kinkaid School, Inc. v. McCarthy*, 833 S.W.2d 226, 231 (Tex.Civ. App.-Houston [1st Dist.] 1992, no writ) (validation statutes cure non-constitutional procedural defects and irregularities in adoption of zoning ordinance); *Richardson v. State*, 199 S.W.2d 239, 244 (Tex.Civ. App.-Dallas 1946, writ ref'd n.r.e.) (basic purpose of validation statute is to give effect to ordinance passed in good faith, but plagued by some procedural or minor

*Scoville v. SpringPark Homeowner's Assn.*, 784 S.W.2d 498, 509 (Tex.App.-Dallas 1990, writ denied) (in order for subsequent instrument to amend original restrictive covenant, instrument creating original restrictions must establish both right to amend and method of

defect). It is also to cure substantive defects of a non-constitutional nature. *See Leach v. City of North Richland Hills*, 627 S.W.2d 854, 858 (Tex.Civ.App.-Fort Worth 1982, no writ) (substantive defects which do not render ordinances unconstitutional can be cured by validating statutes). Validation statutes may not be used, however, to cure constitutional defects. *See Murmur Corp. v. Bd. of Adjustment of City of Dallas*, 718 S.W.2d 790, 793 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). Moreover, "[v]alidation statutes cannot validate what the legislature could not pass into law in the first instance." *West End Pink, Ltd. v. City of Irving*, 22 S.W.3d 5, 6 (Tex.App.-Dallas 1999, pet. denied) (citing 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY & SPECIAL DISTRICT LAW § 3.13 (1989)); *see City of Murphy v. City of Parker*, 932 S.W.2d 479, 485 (Tex.1996) (Gonzales, J., dissenting) (validation statutes "are not intended to put the Legislature's stamp of approval on otherwise void enactments.").

■■■■■ "The right of eminent domain granted by the constitution resides in the legislature, and the legislature may declare the conditions of its use. . . ." *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 716 (Tex.App.-Corpus Christi 2000, pet. denied). We have concluded, however, the covenant restricting the City's power of eminent domain is contrary to public policy and void. Thus, even though the legislature may declare the conditions of its use, to validate what we have concluded is against public policy and void is not what the legislature intended by the enactment of the validation statutes. We conclude, therefore, the trial court correctly drew its

amendment). Because of the disposition of this twelfth issue and issue two, we need not reach the question of whether a method of termination, if any, expressed in the documents controlled the termination.

fifth legal conclusion from the facts when it refused to apply the City's claim of validation by statute in this case. *See Dallas Morning News,* 861 S.W.2d at 536. The challenged conclusion of law is not erroneous as a matter of law. *See Stable Energy,* 999 S.W.2d at 547. Accordingly, the City's tenth issue is overruled.

## VII. Limitations

By its seventh issue, the City asserts that under any and all legal theories brought by the Taylors, the statute of limitations applies to bar recovery. The City brings an evidentiary challenge contending the trial court erred in finding the lawsuit was timely (finding of fact 1) and filed in a reasonable time (finding of fact 2), and concluding the claim was not barred by limitations (additional conclusions of law 3 and 6). The City argues that it proved its affirmative defense of limitations and, thus, recovery is precluded as a matter of law because the evidence was legally insufficient to support a judgment otherwise. Alternatively, the City complains that the decision of the court is against the overwhelming weight of the evidence.

 A four-year statute of limitations applies to contract actions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). However, in a contract that contemplates continuing obligations, the following rule applies:

> Limitations begins to run on a continuing contract at the earlier of the following: (1) when the work [under the contract] is complete; (2) when the contract is terminated in accordance with its

terms; or (3) when the contract is anticipatorily repudiated by one party and this repudiation is adopted by the other party.

*Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 382 (Tex.App.-Fort Worth 1994, writ denied). As set out above, we have concluded the agreement at issue was a continuous contract and was properly terminated at will by the filing of the Taylor affidavit on August 20, 1997. *See Clear Lake,* 549 S.W.2d at 391–92. Thus, in accordance with the terms of the agreement, being terminable at will, limitations began to run with the filing of the affidavit.[9] *See Hubble,* 883 S.W.2d at 382; *see also Clear Lake,* 549 S.W.2d at 391–92. The Taylors timely filed their suit for a declaratory judgment and, alternatively, for damages, in December 1998. We also note that the City filed a counterclaim seeking a declaratory judgment that the restrictions were valid and the document purporting to terminate and release the restrictions was void and invalid. *See Hubble,* 883 S.W.2d at 382.

The City has not established, as a matter of law, its limitations defense. Nor is the decision of the court against the overwhelming weight of the evidence. Thus, the legal and factual sufficiency challenges fail. Moreover, from our de novo review of the challenged additional conclusions of law, we conclude they are not erroneous as a matter of law. The City's seventh issue is overruled.

## VIII. Laches

 In issue nine the City contends it proved the affirmative defense of laches.

---

9. We also note that the Taylors repudiated the agreement when they filed their affidavit. *See Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 382 (Tex.App.-Fort Worth 1994, writ denied) (Repudiation is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract.). The City filed a counterclaim seeking a declaration that the restrictions were valid and the affidavit was void and invalid. Therefore, it is arguable that the City adopted the repudiation. *See id.*

This is a challenge to additional conclusions of law 3 and 6 wherein the trial court concluded, in part, that the Taylors' claim was not barred by laches. "Laches is usually available only in suits strictly in equity or in actions at law that involve claims of an essentially equitable character." *Brewer v. Nationsbank of State*, 28 S.W.3d 801, 804 (Tex.App.-Corpus Christi 2000, no writ). Moreover, "laches should not bar an action on which the statute of limitations has not run unless allowing the action 'would work a grave injustice.'" *Id.* (citing *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167, 170–71 (Tex.1943)). Here, we have concluded the claim is not barred by limitations. Therefore, to succeed on laches, the City must show: (1) there was an unreasonable delay by the Taylors in asserting their claims; (2) it made a good faith change in position to its detriment because of the delay; and (3) there is some element of estoppel or such extraordinary circumstances that it would be inequitable to allow the Taylors to proceed with their claim against the City after the delay. *Id.* at 804–05.

The City contends that the delay has been to its detriment because the 1974 negotiations have been lost through the deaths of the negotiators. It claims it cannot be restored to its prior condition because at the time of the agreement that followed a lengthy and contested court battle, it had the right of possession of the property. It urges that the termination of the contract cannot revert the City back to that position. The City suggests that had the Taylors argued that the agreement was illegal from the start, it would never have entered into the agreement. The City would then have continued the condemnation proceedings and would currently own the property. The facts of the case, however, reveal that, upon entering the 1974 Agreement, the money the City had deposited into the registry of the court to pay for the Ocean Drive property was returned to the City. The Taylors also conveyed to the City one-half interest in the Water Street property. The value of that property at the time of conveyance was $30,150. Additionally, the Taylors have maintained the property at their expense and have paid taxes on the property.

We cannot conclude the City proved it made a good faith change in position to its detriment because of the delay. *See id.* Additionally, the City did not prove that allowing the action would work a grave injustice, particularly when the City entered into a covenant not to condemn the Ocean Drive property, a covenant that is contrary to public policy and, thus, illegal and void. Therefore, from our de novo review of the challenged additional conclusions of law, we conclude they are not erroneous as a matter of law. We overrule the City's ninth issue as it relates to laches.

## IX. Sovereign Immunity

In issue eight, the City also argues that it is protected by sovereign immunity if the court's ruling was based on the Taylors' claims of anticipated breach, deceit, fraud, fraudulent inducement or unconscionable conduct. However, the trial court refused to find the City liable for these allegations. Thus, this contention fails. The City's eighth issue is overruled.

## X. Attorney's Fees and the City's Remaining Issues

In its sixth issue, the City argues that an award of attorney's fees is not proper if the judgment below is not affirmed. Having found no reason to reverse the trial court judgment, we overrule the City's sixth issue.

Furthermore, we need not address the City's remaining issues as they are not

dispositive to this appeal. TEX.R.APP. P. 47.1.

### XI. Cross–Issue on Damages

■ By one cross-issue, the Taylors contend the trial court erred in refusing to award them actual damages.[10] The conveyance of the Ocean Drive property to George and Fay Taylor provided that should the City violate or not observe the covenant not to condemn, the City agreed to pay $21,000 for the property, the same amount that had been paid to acquire one-half interest in the Water Street property. The Taylors contend that the City's void promise is clearly a "violation or nonobservance," and, as such, falls within the terms used in the 1974 Agreement. Based on this reasoning, the Taylors assert they are entitled to $33,446.96 ($21,000 plus six percent simple interest). The Taylors, however, provide no citations to authority that support their argument that a void promise should be construed as a violation or nonobservance. *See* TEX.R.APP. P. 38.1(h) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record). Furthermore, "claims not made to the trial court generally cannot be raised for the first time on appeal." *Coastal Liquids Transp. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex. 2001). Other than referring to the deed conveying the Water Street property, the Taylors do not provide record citations showing where this argument was made to the trial court. *See* TEX.R.APP. P. 38.1(h); *Coastal Liquids*, 46 S.W.3d at 885. Finally, there is nothing in the record to establish that the Taylors excepted to the judgment, filed a motion for new trial on this basis, or, in some other appropriate manner, indicated to the trial court that they were dissatisfied with the judgment as entered. *See Hart v. Berko, Inc.*, 881 S.W.2d 502, 512 (Tex.App.-El Paso 1994, writ denied), *overruled on other grounds by Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388–89 (Tex.2000). In the filing of this cross-issue the Taylors are not exempt from the rule that their complaint has to be preserved for review. *Formosa Plastics Corp., USA v. Presidio Eng'rs and Contractors, Inc.*, 941 S.W.2d 138, 150 (Tex.App.-Corpus Christi 1995), *rev'd on other grounds*, 960 S.W.2d 41, 43 (Tex. 1998). We, therefore, overrule the Taylors' cross-issue on damages.

### XII. CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

Retired Justice DORSEY not participating.

---

10. The Taylors claimed unjust enrichment against the City and asked for damages in the amount of $97,641.47 including interest. Alternately, if the City contemplated condemnation proceedings, the Taylors pleaded deceit, fraud, fraudulent inducement and unconscionable conduct and asserted damages in the amount of $97,641.47, plus past valorem taxes paid on the Ocean Drive Property in the amount of $76,000. The trial court, however, awarded no relief on of these theories of recovery.