

NUMBER 13-13-00549-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PREMIUM ASSETS, INC.,                                           **Appellant,**

**v.**

LYDIA A. GARCIA D/B/A
JOE LYNN DAZZLES AND MORE
AND LYDIA ANN GARCIA,                          **Appellees.**

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Longoria

Appellant Premium Assets, Inc., appeals a verdict rendered against it following a

bench trial on appellee Lydia Ann Garcia's[1] claims for promissory estoppel and violations

---

[1] Garcia sued in her individual capacity and as Lydia A. Garcia d/b/a Joe Lynn Dazzles and More. We refer to them collectively as "Garcia."

of the Texas Deceptive Trade Practices Act (DTPA).  We affirm.

## I. BACKGROUND

### A.  Background Facts

During the first week of January of 2012, Garcia contacted a real estate broker named Jason Alaniz to discuss obtaining a commercial lease for a store that she planned to open in downtown Corpus Christi, Texas.  Alaniz was the listing agent for appellant, a property management company.  Alaniz referred Garcia to Suite 115-A in American Bank Plaza, a commercial office building that appellant managed for the building's owner, SFP 711 Corpus Christi, LLC (SFP 711).  Suite 115-A was available for Garcia to lease at a monthly rental of $275.00 on a twelve-month lease.  Garcia testified at trial that Alaniz told her that she had been accepted as a tenant by SFP 711 and that "everything was going to be okay and we were just waiting, you know, for the lease to be drawn up and so on."  Alaniz, however, testified at trial that he did not remember telling Garcia that she had been approved by SFP 711.

On January 26, 2012, Garcia executed the lease at Alaniz's office.  At the time that she executed the lease, Garcia gave Alaniz two checks, one for the first month's rent and another for the security deposit required by the terms of the lease.  Alaniz forwarded the checks and the executed lease to appellant.  It is undisputed that Garcia afterwards obtained a commercial insurance policy from Farmers Insurance Group, purchased $2,843.48 in supplies for her business, opened a business checking account, purchased checks for that account, and quit her job as an office manager.

On January 27, 2012, Garcia delivered a copy of the insurance policy to appellant's office and received keys to Suite 115-A and an access card to the building from Noel

Harris, one of appellant's employees. Harris testified that he also permitted Garcia to store display cases in Suite 115-A. Pat Lowery, another employee of appellant, testified at trial that she reviewed Garcia's file after Garcia received the keys from Harris and that she had concerns over whether Garcia would be selling some of the same products as the building's other tenants. Lowery also noticed that Garcia had not yet provided a credit report. Lowery testified that after speaking with Garcia she was satisfied with her answers regarding the products Garcia intended to sell.

However, on February 1, 2012, Lowery instructed Harris to change the locks on Suite 115-A. Appellant later informed Garcia by letter that her tenancy had been rejected because she failed a credit check. Appellant returned Garcia's checks by the same letter. It is undisputed that neither SFP 711 nor appellant executed the lease. Garcia testified at trial that the credit report appellant relied on was for a different person with the name of Lydia Garcia. The parties dispute whether appellant's employees prevented Garcia from recovering the property she had already moved into Suite 115-A.

### B. Lawsuit

Garcia filed suit against appellant alleging causes of action for promissory estoppel and violations of the DTPA.[2] Following a bench trial, the trial court rendered a judgment for Garcia in the amount of $18,651.47 for "reliance damages," pre- and post-judgment interest, and $21,962.50 in attorneys' fees with conditional awards of further attorneys' fees if the case was appealed. The trial court entered the following findings of fact and conclusions of law:

1. On April 23, 2013, Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and

---

[2] Garcia also alleged causes of action for breach of contract and quasi-contract. We will not discuss those causes of action further because the trial court's findings and conclusions do not address them and the parties do not mention them on appeal. *See* TEX. R. APP. P. 47.1.

3

More ("Plaintiff") and Defendant Premium Assets, Inc. ("Defendant"), appeared and announced ready for trial on the above referenced cause of action.

2. The parties agreed to proceed with a trial to the Court.

3. The trial proceeded until it concluded on said date.

4. At the conclusion of trial and after the presentation of evidence, this Court finds as follows:

5. By a preponderance of the evidence, Premium Assets, Inc. engaged in false, misleading, or deceptive acts or practices that Lydia Garcia d/b/a/ Joe Lynn Dazzles and More relied on to her detriment and that was a producing cause of damages to Lydia Garcia d/b/a/ Joe Lynn Dazzles and More.

6. Specifically, this Court finds by a preponderance of the evidence that the following laundry list violations were committed by Defendant Premium Assets, Inc.:

   A. Defendant, Premium Assets, Inc. represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have or that a person has a sponsorship, approval, status, affiliation, or connection which it did not;

   B. Defendant, Premium Assets, Inc. caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

   C. Defendant, Premium Assets, Inc. represented that goods or services are or will be of a particular quality if they were of another;

   D. Defendant, Premium Assets, Inc. failed to disclose information concerning goods or services that was known at the time of the transaction with the intention to induce Lydia Garcia d/b/a/ Joe Lynn Dazzles and More into a transaction she otherwise would not have entered into if the information had been disclosed;

   E. Defendant, Premium Assets, Inc. advertised goods or services with intent not to sell them as advertised; *and*

   F. Defendant, Premium Assets, Inc. passed off goods or services as those of another.

4

7. The Court further finds that the Plaintiff, Lydia Garcia d/b/a/Joe Lynn Dazzles and More negotiated the terms of a lease agreement with Jason Alaniz, an agent of the Defendant Premium Assets, Inc., and that all of the terms and conditions of the Lease Agreement were agreed to and were contained in the Lease Agreement, which was introduced into evidence during the trial.

8. Jason Alaniz was an agent for Defendant, Premium Assets, Inc. who had the authority to negotiate the terms of the lease agreement with a tenant on the Defendant Premium Assets, Inc.'s behalf.

9. Jason Alaniz, Defendant Premium Assets, Inc.'s agent, was acting within the scope and course of his duty at all times while negotiating the lease agreement with the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More.

10. Jason Alaniz, Defendant Premium Assets, Inc.'s agent, had the actual, implied or apparent authority to represent to the Plaintiff, Lydia Garcia d/b/a/Joe Lynn Dazzles and More that the Lease Agreement had been approved by the owner, SFP 711 Corpus Christi, LLC.

11. Defendant Premium Assets, Inc. was the management company and agent for the owner, SFP 711 Corpus Christi, LLC.

12. Defendant Premium Assets, Inc., and/or Jason Alaniz, Defendant Premium Assets, Inc.'s agent, did not disclose to the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More that there was an alleged requirement that she complete a credit check prior to her lease agreement with the landlord becoming final or that her Lease Agreement was contingent on a credit check.

13. Defendant Premium Assets, Inc., and/or Jason Alaniz, Defendant Premium Assets, Inc.'s agent, disclosed to the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More that her Lease Agreement had been accepted by the landlord and that she was approved to move into her commercial unit in February, 2012.

14. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More, in reliance on the representations of Jason Alaniz, Defendant Premium Assets, Inc.'s agent, issued payment for the security deposit and first month's rental amount to the Defendant.

15. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More, in reliance on the representations of Defendant Premium Assets, Inc., and/or Jason Alaniz, Defendant Premium Assets, Inc.'s agent, purchased

merchandise, commercial insurance coverage, materials, inventory, and equipment for her commercial unit which totaled $2,843.48 in damages.

16. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More, in reliance on the representations of Defendant Premium Assets, Inc., and/or Jason Alaniz, Defendant Premium Assets, Inc.'s agent, suffered $15,807.96 in additional damages.

17. Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More, executed a Lease Agreement with the owner, SFP 711 Corpus Christi, LLC on January 26, 2013.

18. The Lease Agreement did not contain any requirements that a credit report was required to be executed prior to the Lease Agreement becoming finalized.

19. Defendant, Premium Assets, Inc.'s property manager confirmed that the Defendant Premium Assets, Inc., had never previously required a credit report for the leasing of a commercial unit of the size of the unit the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More had leased.

20. Defendant, Premium Assets, Inc., ratified the actions and representations of their agent, Jason Alaniz in the following ways:

    A. Defendant, Premium Assets, Inc., provided the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More with a key to her unit;

    B. Defendant, Premium Assets, Inc., provided the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More with a gate code to her unit; and

    C. Defendant, Premium Assets, Inc., allowed the Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More to move her personal property into the unit without objection.

21. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More relied upon said actions and ratifications by the Defendant, Premium Assets, Inc.

22. Defendant, Premium Assets, Inc. subsequently locked the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More out of her unit after the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More had stored her personal property in the unit.

23. Defendant, Premium Assets, Inc. locked the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More out of her unit without first running a credit report on the Plaintiff.

24. The credit report run on the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More by the Defendant Premium Assets, Inc. contained financial and legal information for individuals who were not the Plaintiff.

25. Defendant, Premium Assets, Inc. failed to conduct an investigation into the credit report's accuracy nor did it ask the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More for clarification on the discrepancies.

26. Defendant, Premium Assets, Inc. refused to honor the terms of the Lease Agreement and the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More was not allowed to occupy and peacefully enjoy the commercial unit she had leased.

27. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More's personal property has been held by Defendant, Premium Assets, Inc. since February 1, 2012.

28. As a result of Defendant Premium Assets, Inc.'s conduct, the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More was forced to incur attorney's fees.

29. The attorney's fees incurred by the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More through trial were in the amount of $21,962.50.

30. The attorney's fees incurred by the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More were reasonable and necessary under Texas law and the facts of the case.

31. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to additional reasonable and necessary attorney's fees in the amount of $20,000.00 if the Judgment rendered by this Court is appealed to the 13th Court of Appeals.

32. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to additional reasonable and necessary attorney's fees in the amount of $5,000.00 if a Petition [or] Writ is filed with the Texas Supreme Court.

33. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to additional, reasonable and necessary attorney's fees in the amount of $5,000.00 if a Petition [or] Writ is granted by the Texas Supreme Court.

### Conclusions of Law

34. The Court finds that Plaintiff, Lydia Garcia d/b/a/Joe Lynn Dazzles and More is a consumer under the Texas Deceptive Trade Practices Act.

7

35. The Court finds that Defendant, Premium Assets, Inc. can be sued under the Texas Deceptive Trade Practices Act.

36. Specifically, the Court finds that Defendant, Premium Assets, Inc., is a person as defined under the Texas Business and Commerce Code § 17.43(3).

37. The Court finds that Defendant, Premium Assets, Inc.'s actions, as described above, were the producing cause of the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More's damages.

38. By a preponderance of the evidence, Defendant, Premium Assets, Inc. made a promise to the Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More.

39. By a preponderance of the evidence, Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More reasonably and substantially relied on the promise to its detriment.

40. By a preponderance of the evidence, Plaintiff Lydia Garcia d/b/a/ Joe Lynn Dazzles and More's reliance was foreseeable by the Defendant, Premium Assets, Inc.

41. By a preponderance of the evidence, injustice can be avoided only by the enforcement of the promise.

42. Defendant, Premium Assets, Inc., is vicariously liable for the acts of its agent, Jason Alaniz, based on their ratification of his acts and representations during his negotiations with Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More.

43. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to Prejudgment interest on $18,651.44 at the highest rate allowable under [TEX. FIN. CODE ANN.] § 304.104 from June 7, 2012 through the date this judgment is signed.

44. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to post-judgment interest at the rate of 5% per annum, from one day after this judgment is signed and until the judgment is paid in full pursuant to Chapter 304 of the Tex. Fin. Code.

45. All writs and processes for the enforcement and collection of this judgment may issue as necessary.

46. Plaintiff, Lydia Garcia d/b/a/ Joe Lynn Dazzles and More is entitled to the return of her personal property currently being held by Defendant, Premium Assets, Inc. within 30 days from the date this Judgment is executed.

(Emphasis in original)

## II. DISCUSSION

By three issues, which we have renumbered and reorganized, appellant asserts that: (1) the trial court's conclusions of law that Garcia relied to her detriment on appellant's representations that she was accepted as a tenant were erroneous as a matter of law; (2) Garcia judicially admitted that she did not detrimentally rely on appellant's representations; and (3) the statute of frauds and the statute of conveyances prevent Garcia from recovering.[3]

### A. Standard of Review

We review a trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The appellant may not challenge the trial court's conclusions of law for factual insufficiency, but appellate courts review the conclusions the trial court drew from the facts to determine their correctness. *Id.* We will not reverse a conclusion of law unless it is erroneous as a matter of law. *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 718 (Tex. App.—Corpus Christi 2004, pet. withdrawn). An erroneous conclusion of law does not require reversal if the trial court rendered the proper judgment. *BMC Software*, 83 S.W.3d at 794.

### B. Does the Lease Agreement Prevent a Finding of Detrimental Reliance on Garcia's DTPA and Promissory Estoppel Claims?

---

[3] Appellant includes an additional issue arguing that if the lease agreement was enforceable, Garcia would only have a breach-of-contract claim against SFP 711. We need not address that issue because, as we explain in greater detail below, Garcia's suit does not seek to enforce the lease agreement. *See id.*

Appellant first argues that the trial court's conclusions that Garcia proved the element of detrimental reliance, common to both the promissory estoppel and DTPA claims, are erroneous as a matter of law because Garcia signed the lease. Appellant asserts that the lease contained a provision disclaiming reliance on any representations outside of the lease.

We disagree. Appellant is correct that a plaintiff cannot prevail under the DTPA or under a theory of promissory estoppel without showing that the plaintiff relied on a representation to the plaintiff's detriment. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) ("Moreover, under 17.50(a)(1) [of the DTPA], a consumer loses without proof that he relied to his detriment on the deceptive act."); *Garcia v. Lucero*, 366 S.W.3d 275, 280 (Tex. App.—El Paso 2012, no pet.) ("The elements of promissory estoppel are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment."). However, appellant has not explained how or why the lease prevents Garcia from showing detrimental reliance when Garcia did not sue to enforce a provision of the lease and it is undisputed that the lease never came into effect.

Regarding Garcia's DTPA claim, the Texas Supreme Court has been clear that a plaintiff may maintain a DTPA action for oral misrepresentations outside of a contract. *See Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex. 1985); *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 243 n.13 (Tex. App.—El Paso 2012, pet. denied) (observing that liability under the DTPA for misrepresentations "is neither increased nor diminished by the presence of a formal written contract covering the identical subject matter" (citations omitted)). Garcia's First Amended Petition, her live petition, alleged that

10

appellant's agents made false representations before and after she executed the lease. *See Weitzel*, 691 S.W.2d at 600. Appellant has not explained further why Garcia may not maintain a claim under the DTPA for these alleged misrepresentations. Appellant also has not explained why the lease prevents Garcia from showing detrimental reliance under her promissory-estoppel theory.[4] While the lease's merger clause might be relevant if Garcia sued SFP 711 to enforce a promise to sign the lease, Garcia did not file such a lawsuit. *See, e.g.*, *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555–56 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (addressing a suit for promissory estoppel to enforce a promise to sign a document). Appellant has presented no authority explaining why the unexecuted lease is relevant to Garcia's claim for promissory estoppel or for violations of the DTPA.

In sum, we conclude that the existence of the lease agreement does not make the trial court's conclusions of law that Garcia proved both her DTPA and promissory-estoppel claims legally erroneous. We overrule appellant's first two issues.[5]

## C. Judicial Admission

Appellant's third issue is that Garcia judicially admitted that she did not detrimentally rely on appellant's alleged representations about the lease. Appellant

---

[4] We reject the assertions in appellant's brief that the trial court's conclusions of law on promissory estoppel were erroneous because contractual "privity is required for a promissory estoppel claim." Promissory estoppel is only applicable to enforce promises that are not covered by a valid contract between the parties. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 507 (Tex. App.—San Antonio 2013, pet. denied); *see Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.) ("Promissory estoppel is not applicable to a promise covered by a valid contract between the parties; however, promissory estoppel will apply to a promise outside the contract.").

[5] Appellant's second issue includes the statement that "basic logic indicates that there was no detrimental reliance on the alleged representation by [Alaniz] that [Garcia] had been approved as a tenant. [Garcia] signed the lease at the realtor's office after the alleged representation." Garcia treated this argument as a separate factual-sufficiency challenge. We will not address it in this way because the part of appellant's brief with this wording leads into the judicial-admission issue that we address in part II.C.

asserts that Garcia "knew that the alleged approval [by SFP 711] was subject to the terms of an acceptable lease because she was informed the lease would be signed after the alleged misrepresentation." In other words, appellant asserts that Garcia's statement in the First Amended Petition that she knew the lease had not yet been executed was an admission that she did not rely to her detriment on appellant's representations that it would be.

We disagree. To qualify as a judicial admission a statement must be "clear, deliberate, and unequivocal." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quotation marks omitted). A judicial admission "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary." *Id.* Garcia's statement in her First Amended Petition is, at most, an admission that she knew the lease had not been formally executed by the landlord at the time. Garcia's statement does not address whether or not she relied on appellant's representations that SFP 711 already accepted her as a tenant. Appellant has not pointed to any place in the First Amended Petition where Garcia admits that she was aware that SFP 711 might not execute the lease or that there were additional conditions she must fulfill before SFP 711 would agree to execute the lease. We conclude that Garcia's admissions in the First Amended Petition, if any, were not clear, deliberate, and unequivocal statements that she did not rely to her detriment on appellant's representations. *See id.* We overrule appellant's third issue.

## D. Statute of Frauds and Statute of Conveyances

Appellant's fourth issue is that the trial court's conclusions of law on Garcia's claims are erroneous as a matter of law because the statute of frauds and the statute of

conveyances "prevent[] the prospective tenant, [Garcia], from recovering damages from the property management company, Appellant, who was not a party to the lease."

The statute of frauds makes an agreement for a lease of real estate for a term longer than a year unenforceable unless it is in writing and signed by the person to be charged with the promise or someone lawfully authorized to sign for that person. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (West, Westlaw through Ch. 46, 2015 R.S.). The statute of conveyances makes an agreement to convey an estate in land for a period greater than a year unenforceable unless it is in writing and signed by the conveyor or the conveyor's agent. TEX. PROP. CODE ANN. § 5.021 (West, Westlaw through Ch. 46, 2015 R.S.). Both statutes would be relevant if Garcia sought to enforce the lease against SFP 711, but appellant does not explain how either statute prevents Garcia from recovering from a non-party to the lease for misrepresentations that are separate from the lease.[6] *See* TEX. BUS. & COM. CODE ANN. § 26.01; TEX. PROP. CODE ANN. § 5.021; *see also Chen v. Ma*, No. 03-96-00626-CV, 1998 WL 161363, at **4–5 (Tex. App.—Austin Apr. 9, 1998, no pet.) (mem. op.) (concluding that summary judgment on a DTPA claim was improper because the plaintiff could maintain an action for alleged misrepresentations that induced purchase of land even if the agreement to purchase was barred by the statute of frauds). We overrule appellant's fourth issue.

---

[6] Under this section, appellant cites only case law that might be relevant if Garcia filed suit to enforce the lease or a promise to sign the lease. *See Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553–54 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (observing that promissory estoppel can avoid the statute of frauds where a defendant promised to sign an existing document); *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 268 (Tex. App.—Corpus Christi 1994, writ denied) (holding that written correspondence between the parties was insufficient to satisfy the statute of frauds because the writings did not sufficiently set out of the terms of the agreement and were not signed).

## III. Conclusion

We affirm the judgment of the trial court.

NORA LONGORIA,
Justice

Delivered and filed the
27th day of August, 2015.