**PACIFIC EMPLOYERS INSURANCE COMPANY, Appellant,**

v.

**Ruthann DAYTON, Appellee.**

No. 2–96–279–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 26, 1997.

Rehearing Overruled Feb. 12, 1998.

Scarzafava, Smith, Menke & Suchma, PLLC, Gary A. Scarzafava, Annelie Menke, Houston, Fillmore & Purtle, Mikal S. Lambert, Wichita Falls, for Appellant.

Banner, Briley & White, L.L.P., Steve Briley, Wichita Falls, for Appellee.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Pacific Employers Insurance Company appeals from the jury's finding that appellee Ruthann Dayton had lost the use of her hands as defined by the Texas Workers' Compensation Act (the Act) of 1989 and was therefore entitled to Lifetime Income Benefits (LIBs). On appeal, appellant asserts that: the trial court "failed to acknowledge" and apply the changes to the Act that concern LIBs for total loss of use; the trial court erred in entering judgment for appellee because there was no evidence or insufficient evidence of total loss of use; the trial court failed to properly charge the jury; and the trial court erred in awarding attorney's fees for appellee's attorney. Because we determine that sufficient evidence supported the jury's determination that appellee was entitled to LIBs under the Act, the jury charge was proper, and the trial court did not improperly award attorney's fees to appellee's attorney, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee worked for Levi Strauss as a riveter of clothing beginning in 1981. Her job required repetitive hand movements. Beginning in 1991, she developed problems with her thumb and was found to have carpel tunnel syndrome of her left hand. Her right hand was later found also to have carpel

tunnel syndrome. She had surgery on her left hand in 1991 and on her right in 1992. Her first treating physician, Dr. Mark Huff Jr., initially released appellee to return to work on May 18, 1992. She worked from May until July of 1992 at a lighter duty job, but stopped because of recurring problems with her hands. Nerve conduction studies (EMGs) run on appellee's hands in September of 1992 demonstrated that she was still having problems. Therefore, Huff recommended retraining with the Texas Rehabilitation Commission. On January 15, 1993, Huff certified that appellee had reached maximum medical improvement (MMI) with a whole body impairment rating of 58%. In April of 1993, Dr. Paul Renton examined appellee at appellant's request and determined that she had a 20% whole body impairment rating.

On June 14, 1994, the Texas Workers' Compensation Commission held a benefit review conference. The review officer initially found that appellee was not entitled to LIBs because she had "residual use" of both of her hands. A benefit contested case hearing was then held on August 2, 1994. The hearing officer also decided that appellee was not entitled to LIBs. Appellee appealed. A Texas Workers' Compensation Commission Appeals Panel reversed the hearing officer's decision and remanded. In doing so, the appeals panel directed the hearing officer to make findings of fact regarding the definition of total loss of use in prior law. The appeals panel decision stated that the six enumerated losses under the prior law that entitled a claimant to lifetime benefits and the six listed injuries that entitle a claimant to LIBs under section 408.161 of the labor code are practically identical. The appeals panel stated that the question of whether the condition of appellee's hands were such that she could not get and keep employment requiring the use of her hands was a question of fact for the hearing officer to decide. On remand, the hearing officer decided that appellee was entitled to LIBs because she could not "get and keep" employment using her hands. The appeals panel affirmed the hearing officer's decision on January 17, 1995, finding that

there was sufficient evidence to support the hearing officer's decision that appellee had total and permanent loss of the use of her hands so as to entitle her to LIBs.[1] The evidence that the appeals panel relied on in reaching its decision included a letter from Huff to appellee's lawyer that stated that he had talked to a representative of the Texas Rehabilitation Commission about potential employment for appellee and had concluded that she could not get and keep a job because of the injuries to her wrists.

After the appeals panel issued its decision, appellee was examined by Dr. David Huang at appellant's request. Huang performed tests that indicated that appellee's condition had improved and that she was able to do light to medium work. Because Huff, appellee's treating physician had retired, she requested and received a change of treating physicians from Huff to Dr. Danny Bartel, a neurologist. Bartel examined her on March 7, 1995 and ordered tests that indicated that another surgery would not be beneficial. Based on those tests and his examination, Bartel agreed that appellee could "try" to return to work at a light duty job. Dr. Huang noted that it would be expected that appellee's condition would improve while she was off work but would worsen when she returned to work. At the time of trial, appellee had returned to work at Levi Strauss attaching labels to garments. She had been working for about two months and had progressively increased her work schedule. She testified that she was experiencing tingling, numbness, and burning in her hands. At trial, the jury determined that appellee had lost the use of her hands as defined by the Act and was entitled to LIBs.

## COMPLAINTS ON APPEAL

 Appellant first contends that the trial court "failed to acknowledge and apply the changes" in the Act that concern LIBs for total loss of use. As a general rule, we are bound to consider a point on appeal, even though not technically properly briefed, if our attention is directed to a specific error of

---

1. The hearing officer is the sole judge of the weight and credibility of the evidence. *See* TEX. LAB CODE ANN. § 410.165(a) (Vernon 1996). The

determination of whether a loss is permanent and total is one of fact to be determined by the hearing officer under the applicable law.

the trial court. *See* TEX.R.APP. P. 38.1(e); *Champion v. Wright*, 740 S.W.2d 848, 850–51 (Tex.App.—San Antonio 1987, writ denied). However, a point that is merely an abstract proposition of law, or a general complaint about the trial court's actions is too general and indefinite to merit our review. *See Superior Packing, Inc. v. Worldwide Leasing & Fin., Inc.*, 880 S.W.2d 67, 69 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Pope v. Darcey*, 667 S.W.2d 270, 272–73 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see also* John Hill Cayce, Jr., *Preserving Error on Appeal: A Practical Guide for Civil Appeals in Texas*, 23 ST. MARY'S L.J. 15, 72 (1991). Because we are unable to discern any specific complaint regarding any action, inaction, or ruling of the trial court, we overrule appellant's first point.[2]

Appellant complains, in the next two points, that the trial court erred in entering judgment for appellee because there was no evidence, or in the alternative, insufficient evidence to support the jury's finding that appellee had total loss of the use of her hands so as to qualify for LIBs under the Act. We note at the outset that appellant misstates the applicable standards of review of the evidence. Because appellant had the burden of proof at trial, we will construe these complaints as a challenge to the legal sufficiency of the evidence and a complaint that the jury's finding is against the great weight and preponderance of the evidence. *See* W. Wendell Hall, *Revisiting Standards of Review in Civil Cases*, 24 ST. MARY'S L.J. 1045, 1135–36 & 1138–39 (1993); *see also Gooch v. American Sling Co.*, 902 S.W.2d 181, 183–84 (Tex.App.—Fort Worth 1995, no writ).

## STANDARDS OF REVIEW

### As a Matter of Law

◼ When an appellant is attacking the legal sufficiency of an adverse answer to a finding on which the party had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *See Victoria Bank &*

*Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *See id.; Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

### Great Weight and Preponderance

◼ In reviewing an issue asserting that an answer is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). So considering all of the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained, regardless of whether there is some evidence to support it. *See Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### District Court Review of Workers' Compensation Commission Panel Decision

The workers' compensation statutes provide that, in a review by a district court of a final decision of a commission appeals panel regarding compensability, eligibility, death benefits, or income benefits, the party appealing a decision of the appeals panel has the burden of proof by a preponderance of the evidence. *See* TEX. LAB.CODE ANN. § 410.303 (Vernon 1996); *Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 515 (Tex.1995); *Vanliner Ins. Co. v. Ward*, 923 S.W.2d 29, 31 (Tex.App.—Texarkana 1996, no writ). In a review regarding

---

2. Appellant complains, in the fourth point, that the trial court failed to properly charge the jury on the correct definition of total loss of use. We

will address this complaint under our discussion of that issue.

issues other than compensability, eligibility, death benefits, or income benefits, the trial court reviews the commission appeals panel decision under a substantial evidence standard. *See* Tex. Lab.Code Ann. § 410.255; *Garcia,* 893 S.W.2d at 529–30; *Vanliner Ins. Co.,* 923 S.W.2d at 31.

A review in district court is limited to those issues decided by the appeals panel. *See* Tex. Lab.Code. Ann. § 410.302. The labor code further provides that, in a jury trial, the court, before submitting the case to the jury, shall inform the jury in the court's instructions, charge, or questions to the jury of the commission appeals panel decision on each disputed issue that is submitted to the jury. Id. § 410.304(a); *see also Garcia,* 893 S.W.2d at 515. Although the jury is not required to give the commission appeals panel decision any particular weight, it is required to adopt the specific impairment rating of one of the physicians in the case. *See* Tex. Lab.Code Ann. §§ 410.304(a), 410.306(c); *Garcia,* 893 S.W.2d at 515. Evidence is limited to that presented to the commission appeals panel unless the court makes a threshold finding that the claimant's condition has substantially changed, in which case new impairment evidence may be introduced. *See* Tex. Lab.Code Ann. §§ 410.306(c), 410.307. If the parties dispute whether the claimant's condition has substantially changed, the court must hear from the designated doctor, whose opinion is controlling on this issue "unless the preponderance of the other medical evidence is to the contrary." Id. § 410.307(b). The court's finding of substantial change of condition is not revealed to the jury. *See* id. § 410.307(e).

■ In this case, the disputed issue was whether the workers' compensation panel correctly decided that appellee was entitled

to LIBs. As the party with the burden of proof, appellant was required to prove, by a preponderance of the evidence, that appellee did *not* sustain the total loss of use of both hands at or above her wrists. Appellee, on the other hand, was not required to produce any evidence. *See Vanliner,* 923 S.W.2d at 29; *ESIS, Inc., v. Johnson,* 908 S.W.2d 554, 560–61 (Tex.App.—Fort Worth 1995, writ denied). Any doubt as to whether the evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the claimant. *See Texas Employer's Ins. Ass'n v. Sauceda,* 636 S.W.2d 494, 500 (Tex. App.—San Antonio 1982, no writ).

### Evidence at Trial

In addition to the evidence set forth above, the jury had before it the following evidence:

At trial, appellee introduced and read a letter[3] from Dr. Huff that stated that he did not think that appellee could get and keep employment that required the use of her hands. Huff stated in the letter that appellee could work with periodic rest but that she developed carpel tunnel syndrome after she used her hands repetitively. He stated that appellee could work but that she should not have a job that required the repetitive use of her hands.

Huff also stated that she could work with her hands for about five to ten minutes but by that time the pain would come back. Appellee testified that the main symptom she felt if she used her hands for any length of time was numbness, but that she also felt pain and that the numbness in her hands woke her at night. She testified that she could not grasp objects and that she often dropped dishes and other objects around her house. Appellee testified that since her re-

---

3. The letter read in part:

Unfortunately, this lady would like to be in the work force and be able to do something. However, in discussing this with Texas Rehabilitation Commission, there are no matches with which this lady would be able to obtain gainful employment.

When one reviews my medical records, repeatedly throughout the time it is seen that she has difficulty in carrying out activities of daily living, dropping things, having difficulty in opening jars, and the use of her hands. After consul-

tation with Mr. Vardell with the Texas Rehabilitation Commission and his input in running her profile through the computer and realizing that there is no real opportunity for this lady for gainful employment.

I would have to go with my original thinking about her that *she has suffered the total and permanent loss of use of both hands at the level of the wrists.* I do not feel that she can obtain or keep gainful employment as a result of the bilateral carpal tunnel syndromes involving both wrists. [Emphasis added.]

turn to work, she had experienced a recurrence of the symptoms of burning, numbness, and tingling in her wrists. She stated that Levi Strauss had a quota, that she did not believe that she would be able to maintain that quota, and that she would eventually be fired. Additionally, she testified that she had looked for other employment without success and that the Texas Rehabilitation Commission was not able to find her work or train her for another job.

Neighbors and relatives of appellee also testified that she required help in daily activities such as house cleaning, driving, and lifting. Appellee's brother testified that she was no longer able to play with the grandchildren because she could not lift or hold them, and that she no longer wore contact lenses because she could not put them in her eyes.

Appellant introduced testimony from Diane Parker, a vocational rehabilitation consultant. Parker testified that there were some 200 job categories available to someone in appellee's position. She admitted, however, that those categories did not necessarily correspond with actual, available jobs. She further admitted that she worked for a company that routinely testified for appellant and that some of the jobs listed were absurd.[4]

Appellant introduced and played for the jury the videotaped deposition of Huang. Huang stated that he had examined appellee on appellant's behalf twice. He performed a functional capacity evaluation on appellee that indicated that she should be able to do certain tasks. Specifically, in response to appellant's own question of whether or not, in Huang's opinion, appellee could get and keep employment using her hands, Huang never responded with an unqualified yes. Huang also admitted that when a person with carpal tunnel syndrome rests, the condition improves and when the person returns to work doing repetitive tasks, the condition tends to worsen.

Appellant also called Betty Browning, an occupational health nurse at Levi Strauss. Browning testified that she had worked at Levi Strauss since 1991, that she knew appellee, that appellee was a good worker, and was aware that appellee had significant problems with her hands and wrists. She also testified that after appellee had surgery on both wrists, she attempted to return to work at a less hand-intensive job but that appellee's doctor took her off the job after a few months. After that, appellee did not work for almost four years. Browning testified that since appellee's most recent return to work, she was able to keep up with production but that appellee had told her that she was experiencing pain and tenderness in her wrists several times. Browning had recommended ice packs and ibuprofen. Browning testified that, in her opinion, appellee should be able to continue working.

On cross-examination, Browning admitted that the first time that Levi Strauss contacted appellee about returning to work was approximately two months before trial and that Bartel, appellee's treating physician, had authorized her to try to return to work. Browning also admitted that, although she had met with Bartel personally and obtained his approval for appellee to return to work, she had not contacted Bartel since appellee's return to let him know that appellee was complaining of pain and tenderness. She testified that appellee had not been released from Bartel's care.

Because there was some probative evidence to support the appeals panel's finding that appellee was entitled to LIBs under the Act, appellant's challenge to the evidence as a matter of law fails. Also, the jury was required to consider the decision of the appeals panel in this case and that decision alone would constitute some evidence. Moreover, because the evidence supporting this finding is not so weak as to render the finding unjust, appellant's factual insufficiency point fails. Accordingly, we overrule these points.

## JURY CHARGE

■ Appellant next contends that the trial court improperly charged the jury over its

4. Among the jobs that Parker found appellee was qualified for were a golf club weigher, a rug scratcher, a live ammunition inspector, and a snuff box finisher.

objection, "with the old law definition of 'total loss of use' based on the 'incapacity' standard contained in old Article 8306 § 11a." The definition at issue provided:

"Total loss of use" of a member of the body exists whenever by reason of injury such member no longer possesses any substantial utility as a member of the body or the condition of the injured member is such that the worker cannot get and keep employment requiring the use of such member.

Appellant contends that the definition is an incorrect statement of current law because the "incapacity" language has been removed from the recodified version of the statute and "total loss" has been redefined. To analyze appellant's claim that the new statutory provision provides a different basis for awarding benefits to a claimant in appellee's position, it is helpful to compare the "old" and the "new" statutes. The relevant portion of the former provision stated:

In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to wit:

(1) The total and permanent loss of the sight of both eyes.

(2) The loss of both feet at or above the ankle.

(3) The loss of both hands at or above the wrist.

(4) A similar loss of one hand and one foot.

(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

(6) An injury to the skull resulting in incurable insanity or imbecility.

In any of the above enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.[5]

In addition to this provision, section 10(b) of former article 8306 stated:

If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury. For the purpose of this section only, the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member.[6]

The two provisions were codified at Section 408.161 of the labor code which now provides as follows:

(a) Lifetime income benefits are paid until the death of the employee for:

(1) total and permanent loss of sight in both eyes;

(2) loss of both feet at or above the ankle;

(3) loss of both hands at or above the wrist;

(4) loss of one foot at or above the ankle and the loss of one hand at or above the wrist;

(5) an injury to the spine that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg; or

(6) an injury to the skull resulting in incurable insanity or imbecility.

(b) For purposes of Subsection (a), the total and permanent loss of use of a body part is the loss of that body part.

TEX. LAB.CODE ANN. § 408.161.

Under the old law, the phrase "total loss of use" existed whenever by reason of injury such member no longer possesses any substantial utility as a member of the body or the condition of the injured member is such that the worker cannot get and keep employment. *See Travelers Ins. Co. v. Seabolt*, 361

---

**5.** Act of February 12, 1927, 40th Leg., R.S., ch. 28, § 1, 1927 Tex. Gen. Laws 41, 41, *repealed by* Act of December 12, 1989, 71st Leg., C.S., ch. 1, § 1601, 1989 Tex. Gen. Laws 114, 114 (current version at TEX. LAB.CODE ANN. § 408.161 (Vernon 1996)).

**6.** Act of April 12, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex. Gen. Laws 3290, 3290, *repealed by* Act of December 12, 1989, 71st Leg., C.S., ch. 1, § 1601, 1989 Tex. Gen. Laws 114, 114 (current version at TEX. LAB.CODE ANN. § 408.161 (Vernon 1996)).

S.W.2d 204, 206 (Tex.1962); *City of Del Rio v. Contreras,* 900 S.W.2d 809, 810 (Tex. App.—San Antonio 1995, writ denied); *Sauceda,* 636 S.W.2d at 500. In *Sauceda,* the jury upheld the award of LIBs to the employee although he had returned to his previous employment. *Sauceda,* 636 S.W.2d at 500–01. In affirming the award of lifetime benefits, the court stated: "We recognize that there is no fixed or definite rule of evidence by which a claimant in a workmen's compensation case is required to establish the fact that he has suffered an injury that caused permanent disability." *Id.* at 501–02. The court found persuasive the fact that Sauceda's injured leg remained swollen, caused him pain, and that his condition was, in all likelihood, permanent. *Id.* at 501; *see also Pansegrau v. National Union Fire Ins. Co.,* 23 F.3d 960, 965 (5th Cir.1994).

Appellant urges that the deletion of the term "incapacity" from the new statute evidences an intention on the part of the legislature to no longer provide LIBs for claimants, such as appellee, that have lost the use of any of the above-listed body parts, but have not lost the body part itself. In support of this argument, appellant relies on *Texas Workers' Compensation Commission v. Garcia.* In *Garcia,* the Texas Supreme Court explained in detail the substantive changes incorporated into the recodification of the Texas Worker's Compensation Act. *Garcia,* 893 S.W.2d at 521–23. Notably absent from *Garcia,* however, is any discussion of a change to the level of incapacity or injury a claimant is now required to sustain to qualify for LIBs.[7]

On the contrary, we note that the provision following the list of six listed losses in Section 408.161 specifically requires that "loss of use" (as compared to "loss") must be permanent and total; the definition of "total loss of use" under prior law did not include "permanent," but the application of the definition appears to have included that requirement. The definition of "total loss of use" as applied to the 1989 Act should include the requirements of Section 408.161 that the loss of use be both total and permanent.

Additionally, we reject appellant's argument that the standards applied to loss of use under prior law should not apply to cases decided under the 1989 Act. The list of six listed losses under prior law and the six listed injuries, which Section 408.161 provides lifetime income benefits for, are virtually identical. We find no support for appellant's argument to the contrary. Therefore, we reject appellant's contention that the trial court's instruction to the jury contained an incorrect statement of applicable law. We overrule point four.

## ATTORNEY'S FEES

Lastly, appellant complains that the trial court erred in ordering the payment of attorney's fees to appellee's attorney. The trial court's order provides that appellant is to pay to appellee's attorney the sum of "$6087.09, *by deducting 25% of the benefits paid to [appellee]."* [Emphasis added.] The payment of attorney's fees from a claimant's recovery is specifically authorized by statute. *See* TEX. LAB.CODE ANN. § 408.221(b). We overrule point five.

## CONCLUSION

Having overruled all of appellant's points, we affirm the trial court's judgment.

7. The United States Supreme Court recently discussed the terms "incapacity" and "disability" in interpreting a similar provision of the Longshore and Harbor Worker's Compensation Act in *Metropolitan Stevedore Co. v. Rambo,* — U.S. —, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997). *See also* 33 U.S.C.A. §§ 901–950 (West 1986). In *Metropolitan,* the Court stated:

We may summarize these provisions and their implications this way. Disability is a measure of earning capacity lost as a result of work-related injury. By distinguishing between the diminished capacity and the injury itself, and by defining capacity in relation both to the injured worker's old job and to other employment, the statute makes it clear that disability is the product of injury and opportunities in the job market. Capacity, and thus disability, is not necessarily reflected in actual wages earned after injury ... and when it is not, the fact-finder under the Act must make a determination of disability that is "reasonable" and "in the interest of justice," and one that takes account of the disability's future effects....
*Metropolitan,* — U.S. at —, 117 S.Ct. at 1958, 138 L.Ed.2d at 337.