

## NUMBER 13-08-00028-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

SAN JACINTO TITLE SERVICES OF CORPUS
CHRISTI, LLC AND MARK S. SUVER,                    Appellants,

v.

LIZA A. PRATT,                                              Appellee.

---

**On appeal from the 28th District Court
of Nueces County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

This appeal involves a real estate transaction between appellant Mark S. Suver and

appellee Liza A. Pratt facilitated at the offices of appellant San Jacinto Title Services of

Corpus Christi, LLC (San Jacinto).  Third-party defendant San Jacinto and plaintiff Suver

appeal the trial court's judgment, after a bench trial, in favor of defendant Liza A. Pratt. By seven issues, San Jacinto argues that (1) the trial court erred in enforcing certain agreements not memorialized in writing against San Jacinto because of merger and "no oral agreement" clauses in the contract; (2) the trial court erred in holding San Jacinto liable for failing to record the deed of trust absent San Jacinto's agreement to do so; (3) the trial court erred in holding San Jacinto liable for a fraudulently altered deed of trust because San Jacinto is statutorily protected from having to disclose fraudulent liens; (4) Pratt was not entitled to attorney's fees because no actual damages were awarded; (5) there was no evidence Pratt incurred any attorney's fees as a result of defending against San Jacinto; (6) the trial court erred in awarding attorney's fees for underlying claims for which attorney's fees were not available; and (7) the trial court erred in failing to segregate fees between recoverable and unrecoverable claims. By two issues, Suver complains that (1) the trial court erred in nullifying his ad valorem tax lien against Pratt; and (2) the trial court failed to remove his Internal Revenue Service (IRS) tax lien on the property, on which he intends to foreclose. We affirm.

## I. BACKGROUND

Pratt owned a house in Corpus Christi that was infested by mold and burdened by substantial tax liens held by both the IRS and Nueces County. In late February 2004, on the Thursday before the Tuesday courthouse foreclosure of her home, Pratt was approached by Suver, who offered her an opportunity to avoid foreclosure by selling him the house. To remove her house from the foreclosure list, Pratt entered into an installment payment plan with Nueces County for her delinquent ad valorem taxes. Suver agreed to help Pratt by paying Nueces County the first installment of $3,000. Suver and Pratt then

2

came to an agreement regarding the sale of the house. By their agreement, Pratt would seller-finance the house with a zero-percent-interest $50,000 promissory note from Suver to Pratt. Suver agreed to make the payments on Pratt's installment agreement with Nueces County for the delinquent ad valorem taxes and to be ultimately responsible for the entire amount of the delinquency. Suver also agreed to obtain a complete release of Pratt's obligations to the IRS. Suver and Pratt agreed that the house would serve as collateral for their agreement.

Shortly thereafter, Suver and Pratt signed a written contract for the sale of the house, which purported to memorialize their agreement and provided for a March 15, 2004 closing. San Jacinto escrowed the contract and agreed to conduct the closing. Karen Borchardt, branch manager and escrow officer at the San Jacinto branch where the closing was to occur, met with Pratt before the closing to answer Pratt's questions, including the manner in which the IRS and ad valorem tax liens were to be handled and documented. Borchardt then selected the specific documents to be prepared by San Jacinto's legal department for the closing. However, Borchardt did not provide the attorney preparing the documents with Suver and Pratt's contract or otherwise inform the attorney of Suver and Pratt's agreements concerning the IRS lien and delinquent ad valorem taxes. As such, the closing documents did not reflect the existing liens on the property or Suver and Pratt's agreement that Suver was responsible for satisfying the delinquent taxes and that the house would serve as collateral for that obligation.

Because Suver was unable to obtain the funds to close on March 15, 2004, the closing date was moved to March 26, 2004. On that date, at San Jacinto's offices, Borchardt presented Suver and Pratt with the closing documents prepared by San Jacinto's

3

attorney.  Borchardt also presented Suver and Pratt with a written waiver agreement (the

waiver agreement) that provided as follows:

> San Jacinto Title Company (the "TITLE COMPANY") has been requested by you [Suver and Pratt] to serve as escrow and settlement agent for the purpose of receiving executed documents for recording.  This letter will serve as your letter of instructions to the title company, and the understanding between you and the TITLE COMPANY regarding function of the title company in this transaction.
>
> 1.  THE TITLE COMPANY HAS NOT EXAMINED TITLE TO THE PROPERTY, AND WILL NOT, AS A CONSEQUENCE OF CLOSING THE TRANSACTION, EXAMINE TITLE TO THE PROPERTY.
>
> . . . .
>
> 3.  By signing this agreement, all parties hereto hereby acknowledge and affirm to the TITLE COMPANY that neither the TITLE COMPANY nor its attorney . . . have [sic] given any advice to the undersigned [Suver and Pratt], and has not acted as the attorney for any of the undersigned parties.
>
> 4.  THE PARTIES HERETO ARE ADVISED THAT THEY SHOULD CONSULT WITH THEIR OWN PERSONAL LEGAL COUNSEL REGARDING THE FORM AND CONTENT OF THE LEGAL DOCUMENTS SIGNED BY THE THEM TO CLOSE THE REFERENCED TRANSACTION AND THE TAX AND LEGAL IMPLICATIONS OF THE TRANSACTION.
>
> 5.  BUYER and SELLER hereby agree to indemnify and HOLD HARMLESS the TITLE COMPANY from any and all claims, costs, liabilities, losses including attorneys fees and court costs, that may arise by, through or under, directly or indirectly, the transaction referenced above.  The only activities of the TITLE COMPANY that are accepted [sic] from this indemnity and hold harmless are the gross negligence and/or willful misconduct of the TITLE COMPANY.
>
> 6.  There are no agreements between the TITLE COMPANY and the undersigned except as set forth in this letter.  Specifically, there are no oral agreements between the TITLE COMPANY and SELLER and BUYER.

Both Suver and Pratt signed the waiver agreement and the remainder of the closing

documents.

4

After the closing, Suver took possession of the closing documents from Borchardt. Before recording the documents, however, Suver altered the "Clauses and Covenants" portion of the deed of trust by crossing out "Grantor" and handwriting in "Grantee", which effectively changed the obligation to "pay all taxes and assessments on the property" from himself to Pratt. Suver then recorded the documents.

In the year following the closing, Suver failed to make payment on the $50,000 promissory note. He did pay all of the delinquent ad valorem property taxes and secured a release of the IRS's lien on the house by paying $50,000 to the IRS on Pratt's behalf. However, the IRS is still pursuing Pratt personally for $56,102.01 in past due federal income taxes.

Because of his non-payment on the promissory note and failure to fulfill his promise to obtain a complete release of all obligations Pratt has to the IRS, Pratt sent a letter to Suver in October 2005, notifying him of her intention to sell the house in a non-judicial foreclosure sale. Suver filed this lawsuit in December 2005, to enjoin the foreclosure and obtain damages for wrongful foreclosure. The trial court granted a temporary restraining order, and after a hearing, the trial court granted a temporary injunction enjoining the foreclosure sale. Pratt filed her answer and counterclaims against Suver, alleging causes of action for breach of contract and fraud. In September 2006, Pratt added San Jacinto as a third-party defendant and filed claims against San Jacinto for breach of contract, fraud and misrepresentation, negligence, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act.

The case was tried to the bench in October 2007. The trial court entered judgment in favor of Pratt and ordered that Suver and San Jacinto take nothing by their claims

5

against Pratt.[1] The judgment, in relevant part, lifted the injunction granted by the trial court to Suver to prevent Pratt's non-judicial foreclosure on the property, reformed the deed of trust to delete the hand-written alterations by Suver and reflect tax liens on the property, and ordered that Suver and San Jacinto were jointly and severally liable to Pratt for $55,289.23. All other relief requested by the parties and not specifically granted by the judgment was denied. In response to San Jacinto's request, the trial court also issued twenty-five pages of findings of fact and conclusions of law. In its conclusions of law, the trial court found Suver and San Jacinto liable for breach of contract and San Jacinto liable for negligent misrepresentation, deceptive trade practices, and fraud.

## II. STANDARD OF REVIEW

In an appeal of a bench trial on the merits, findings of fact and conclusions of law are specifically and meaningfully tied to appropriate standards of appellate review and are therefore truly beneficial to appellate review. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex. 1992). Legal and factual sufficiency of the evidence standards of review govern an appeal of a bench trial, and accordingly, it is incumbent upon the appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Carrasco v. Stewart*, 224 S.W.3d 363, 366-67 (Tex. App.–El Paso 2006, no pet.); *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 580 (Tex. App.–El Paso 2004, pet. denied). When a party appeals from a bench trial, it must complain of specific findings and conclusions of the trial court. *Carrasco*, 224 S.W.3d at 367; *see also Colmenero v. Martinez*, No. 13-08-00246-CV, 2008 WL 4938277, at *4 (Tex. App.–Corpus Christi Nov. 20, 2008, pet. denied)

[1] San Jacinto filed a counterclaim against Pratt for breach of her alleged promise in the waiver agreement to indemnify and hold San Jacinto harmless for claims arising from the transaction.

6

(mem. op.). A general complaint against the trial court's judgment does not present a justiciable question. *Carrasco*, 224 S.W.3d at 367; *see also Colmenero*, 2008 WL 4938277, at *4. Although findings of fact are not conclusive when, as in this case, a complete reporter's record appears in the record, "unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex. App.–Corpus Christi 2004, pet. withdrawn).

A no-evidence, or legal-insufficiency point, is a question of law which challenges the legal sufficiency of the evidence to support a particular finding of fact. *Quick v. Plastic Solutions of Tex., Inc.*, 270 S.W.3d 173, 181 (Tex. App.–El Paso 2008, no pet.). A legal-sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

We review the trial court's conclusions of law for correctness, i.e., "de novo to determine whether the trial court correctly drew the legal conclusions from the facts." *Taylor*, 126 S.W.3d at 718. "Erroneous conclusions of law are not binding on the appellate court, but if the controlling findings of fact will support a correct legal theory, are supported by the evidence, and are sufficient to support the judgment, then the adoption of erroneous legal conclusions will not mandate reversal." *Quick*, 270 S.W.3d at 181; *see also Colmenero*, 2008 WL 4938277, at *4.

7

**A.     San Jacinto's Issues**

We note at the outset that, although it appears to be complaining of the findings and conclusions of the trial court, San Jacinto has neither appropriately framed its issues as challenges to the sufficiency of the evidence, nor specified the findings of fact and conclusions of law about which it complains.  *See Carrasco*, 224 S.W.3d at 366-67.  However, because we are instructed to liberally construe an appellant's issues, *see Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants."), we have nonetheless reviewed the substance of San Jacinto's arguments, determined that San Jacinto is questioning the legal sufficiency of certain findings and the correctness of certain conclusions, and, to the extent possible, discerned which findings of fact and conclusions of law San Jacinto has implicitly challenged for each argument.  *See* TEX. R. APP. P. 38.9; *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 417 (Tex. App.–Houston [1st Dist.] 2008, no pet.).

**1.     The Merger and "No Oral Agreements" Clauses**

By its first issue, San Jacinto argues that the trial court erred in finding that San Jacinto was party to the agreements between Suver and Pratt that were not memorialized in the waiver agreement signed by Suver and Pratt at the closing.  It appears that San Jacinto is challenging the following findings of fact:

16.     At the meeting between Pratt and Karen Borchardt, Karen Borchardt expressly represented to Pratt that –

a.     San Jacinto would be responsible for obtaining the real estate documents to use for closing.

8

b. The agreements reached between Suver and Pratt would be properly reflected in the real estate documents and closing procedures.

c. The real estate documents used to close the transaction would be sufficient to properly reflect the terms of Suver's and Pratt's agreements . . . .

d. The entire closing procedure, and the real estate documents, would be reviewed and approved by the San Jacinto legal department.

. . . .

18. By agreeing to conduct the closing, San Jacinto agreed with Pratt to select the appropriate real estate documents, and appropriate closing procedures to be utilized, so that the closing would adequately embody the terms of the agreements reached between Suver and Pratt.

. . . .

39. At the closing, Karen Borchardt represented to Pratt that the documents presented and signed at closing were sufficient to embody the agreements between Suver and Pratt regarding the sale of the property . . . .

40. At closing, Karen Borchardt represented to Pratt that the closing procedures selected by Karen Borchardt were sufficient to properly reflect the agreements reached between Pratt and Suver regarding the sale of the property . . . .

San Jacinto points to the merger and "no oral agreements" clauses in the waiver agreement signed by Pratt and Suver at the closing and contends that, absent any ambiguity in that agreement, the trial court's findings were erroneous as a matter of law because the trial court was not permitted to look outside the written waiver agreement to find the preceding facts. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also Chapman*, 118 S.W.3d at 751 (holding that the evidence supporting a fact finding is legally insufficient where the court is barred by rules of law from

9

giving weight to the only evidence offered to prove a vital fact). Pratt responds that San Jacinto cannot now rely on the language of the waiver agreement to avoid liability for the misrepresentations it made in connection with the closing. We agree with Pratt.

It is true that, in some circumstances, contracts containing merger and "no oral agreements" clauses and other provisions disclaiming reliance on misrepresentations of the parties preclude causes of action based on those misrepresentations, such as fraud and deceptive trade practices. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60-61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180-81 (Tex. 1997); *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.–Houston [14th Dist.] 2007, pet. denied); *see also In re Int'l Bank of Commerce*, No. 13-07-00693-CV, 2008 WL 192260, at *16 (Tex. App.–Corpus Christi Jan. 18, 2008, orig. proceeding) (mem. op.). However, "[c]ourts must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding." *McAllen*, 268 S.W.3d at 60. Relevant circumstances include whether: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations, the parties specifically discussed the issue that has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other at arm's length; (4) the parties were knowledgeable in relevant business matters; and (5) the release language was clear. *Id.*; *see Woodlands Land Dev. Co., L.P. v. Jenkins*, 48 S.W.3d 415, 422 (Tex. App.–Beaumont 2001, no pet.); *see also Cell Comp, L.L.C. v. Sw. Bell Wireless, L.L.C.*, No. 13-07-00120-CV, 2008 WL 2454250, at *4 (Tex. App.–Corpus Christi June 19, 2008, no pet. h.) (mem. op.).

Here, the trial court's unchallenged findings of fact state that the waiver agreement was presented to Pratt and Suver at the closing and that San Jacinto "represented to Pratt that the purpose of the [waiver agreement] was to document that Bryan Stone was serving as San Jacinto's attorney, and was not the attorney for either Suver or Pratt." The evidence at trial demonstrated that neither Pratt nor Suver had even seen the document before the closing, much less that the terms of the waiver agreement were negotiated. Moreover, it is uncontested that Pratt was not represented by counsel, and the evidence established that Pratt was not experienced or knowledgeable in conducting real estate transactions. Based on this evidence, we conclude that the merger and "no oral agreements" clause in the waiver agreement does not preclude, as a matter of law, the trial court's findings that San Jacinto entered various agreements with Pratt other than those embodied in the waiver agreement. *See Jenkins*, 48 S.W.3d at 422. Rather, we conclude that the evidence was legally sufficient to support the trial court's findings of fact numbers 16, 18, 39, and 40. *See Chapman*, 118 S.W.3d at 751. San Jacinto's first issue is overruled.

## 2. Agreement to Record

By its second issue, San Jacinto contends that the trial court erred in finding that San Jacinto agreed to record the closing documents. San Jacinto implicitly challenges the following findings of fact:

17. By agreeing to conduct the closing, Karen Borchardt impliedly represented to Pratt that San Jacinto would be responsible for the proper recording of the real estate documents.

. . . .

46. [The waiver agreement] was interpreted by all parties to reflect that San Jacinto would be responsible for recording the executed real estate documents.

11

47.    [The waiver agreement] is properly interpreted to reflect that San Jacinto would take possession of the executed real estate documents for the purpose of recording the documents.

48.    After notarizing the real estate documents, instead of recording the documents[,] as she should have done, Karen Borchardt gave the signed real estate documents to Suver to record.

49.    Karen Borchardt selected Suver to act as San Jacinto's agent for the purpose of fulfilling San Jacinto's duty to record the real estate documents.

San Jacinto argues that because Suver was obligated under the written contract for sale between Suver and Pratt to pay the recording fees, San Jacinto could not have been responsible for recording the documents absent a writing signed by San Jacinto assuming what San Jacinto describes as Suver's debt under the sale contract. In other words, the trial court's findings that San Jacinto had agreed to record closing documents were contrary to the statute of frauds and therefore erroneous as a matter of law. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(2) (Vernon 2009) (providing that "a promise by one person to answer for the debt, default, or miscarriage of another person" must be in writing and signed by the person charged with the promise); *see also Chapman*, 118 S.W.3d at 751.

We are unpersuaded by San Jacinto's argument for two reasons. First, the waiver agreement—signed by Pratt and Suver at the closing and to which the trial court found San Jacinto to be a party—is arguably a writing memorializing San Jacinto's agreement to record the closing documents. The relevant portion of the waiver agreement provides that San Jacinto "has been requested by you [Suver and Pratt] to serve as escrow and settlement agent for purpose of receiving executed documents *for recording*." (Emphasis

12

added.)  For San Jacinto to now ignore the very agreement upon which it so steadfastly relied in its first issue is both inconsistent and disingenuous.

Second, even if the waiver agreement does not constitute a written agreement by San Jacinto to record the closing documents, we nonetheless fail to understand how the alleged promise by San Jacinto to physically record the documents constitutes an assumption of Suver's contractual obligation to pay the recording fees.  San Jacinto has cited us to no authority, and we find none, applying the debt-assumption statute of frauds provision in this context.  Moreover, San Jacinto does not challenge finding of fact number 8—which is supported by the evidence, has not been disproved as a matter of law, and in which the trial court expressly found that Suver retained the obligation to pay all fees and expenses associated with the sale contract.  *See Taylor*, 126 S.W.3d at 717.  Because we are bound by such unchallenged findings of the trial court that are supported by the evidence and not disproved as a matter of law, we cannot conclude that San Jacinto assumed what it characterizes as Suver's debt to pay the recording fees.  *See id.*  San Jacinto's second issue is therefore overruled.[2]

---

[2] By its third issue, San Jacinto appears to generally challenge the trial court's judgment that San Jacinto is jointly and severally liable for Pratt's damages on the basis that San Jacinto had no legal duty to disclose any fraudulent liens used in connection with the closing.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.003(b) (Vernon Supp. 2009).  San Jacinto contends that it cannot be held liable for damages arising out of Suver's alteration of the deed of trust because San Jacinto is protected, by statute, from liability for failing to disclose liens that were created without Pratt's consent.  *See* TEX. GOV'T CODE ANN. § 51.901(c)(2) (Vernon Supp. 2009).  However, unlike San Jacinto's first two issues in which we were able to discern challenges to specific findings of fact or conclusions of law, we are unable to do so here based on San Jacinto's briefing of its third issue.  *See Carrasco v. Stewart*, 224 S.W.3d 363, 367 (Tex. App.–El Paso 2006, no pet.) (requiring an appellant to challenge specific findings and conclusions made by the trial court); *see also Colmenero v. Martinez*, No. 13-08-00246-CV, 2008 WL 4938277, at *4 (Tex. App.–Corpus Christi Nov. 20, 2008, pet. denied) (mem. op.).  San Jacinto's general challenge has not presented a justiciable question for our review, *see Carrasco*, 224 S.W.3d at 367, and San Jacinto's third issue is therefore waived.  *See* TEX. R. APP. P. 38.1(i).

### 3.    Attorney's Fees

In its fourth issue, San Jacinto complains that the trial court erred in holding San Jacinto liable for Pratt's attorney's fees where Pratt was not awarded any economic actual damages against San Jacinto.  By this issue, San Jacinto appears to challenge the correctness of the trial court's conclusions of law awarding attorney's fees to Pratt.  *See Taylor*, 126 S.W.3d at 718.  Pratt responds that the trial court did not err because it acted within its discretion to award her attorney's fees *as damages*.  We agree.

Generally, a party may not recover attorney's fees unless such an award is authorized by statute or contract.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 424 (Tex. App.–Corpus Christi 1998, pet. denied).  It is also generally true that attorney's fees are unavailable unless a party is awarded actual damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008) (providing for recovery of attorney's fees "in addition to the amount of a valid claim costs"); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). However, "equitable principles may allow the recovery of attorney's fees" as a form of damages where a party was required to expend funds defending litigation involving a third party as a consequence of the wrongful act of the defendant.  *Massey v. Columbus State Bank*, 35 S.W.3d 697, 701 (Tex. App.–Houston [1st Dist.] 2000, pet. denied); *see GXG, Inc.*, 977 S.W.2d at 424; *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 839 (Tex. App.–Eastland 1984, no writ).[3]

---

[3] At least one court of appeals, Dallas, has declined to apply the equitable exception from *Baja*.  *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 899 (Tex. App.–Dallas 2003, no pet.); *Peterson v. Dean Witter Reynolds*, 805 S.W.2d 541, 549 (Tex. App.–Dallas 1991, no writ).

Here, the uncontested findings of fact provide, in relevant part, as follows:

10. San Jacinto was chosen by Suver because he wanted the transaction to close with Karen Borchardt as the escrow officer conducting the closing.

11. At all relevant times, Karen Borchardt was the Branch Manager in charge of the San Jacinto office [where the closing took place].

. . . .

14. *. . . Karen Borchardt was aware of the terms of the agreement reached between Suver and Pratt.*

15. *. . . Karen Borchardt was aware of the existence of the IRS lien and the status of the delinquent ad valorem taxes.*

. . . .

27. Karen Borchardt represented to Pratt that San Jacinto would be responsible for having the real estate documents prepared which were to be used at the closing.

. . . .

30. Although Karen Borchardt was in possession of the [written sale] contract between Suver and Pratt . . . she did not furnish [it] to [San Jacinto's attorney,] Bryan Stone, nor did she otherwise inform him of the IRS lien, the delinquent ad valorem taxes, or the parties' agreements regarding those matters.

. . . .

36. The real estate documents . . . *would have been prepared differently* if Bryan Stone had been informed by Karen Borchardt of the parties' agreement, as reflected by the written real estate contract between Suver and Pratt.

. . . .

58. Based on the testimony and evidence presented by Suver at the December 15, 2005 hearing on temporary injunction, this Court (the trial court) was misled to believe that the [closing documents], alone and solely, constituted the entire transaction between Pratt and Suver. Based on the evidence and arguments presented by Suver,

15

this Court was led to believe that the real estate contract between the parties . . . was not part of the transaction, when in fact it was a material part of the sales transaction.

59. Based on the testimony and evidence presented by Suver at the December 15, 2005 temporary injunction hearing, this Court was misled to believe that the Deed of Trust . . . was the Deed of Trust as it was signed and used at the closing of this transaction, when in fact [the Deed of Trust] was an altered document, that had been altered by Suver.

. . . .

61. But for Suver's actions as referenced in Findings of Fact 58 and 59, this Court would not have granted a temporary restraining order or temporary injunction enjoining Pratt's foreclosure of her Deed of Trust Lien.

62. Suver's arguments presented to this Court, to the effect that Pratt represented to him that there were no prior liens on the property, could not have been successfully maintained at the temporary injunction hearing if the Deed of Trust had been properly prepared to reflect the existence of the prior liens of the IRS and Nueces County. *The absence of this information from the Deed of Trust is a direct result of Karen Borchardt's failure to furnish the necessary information to Bryan Stone.*

63. *Karen Borchardt knew that the Deed of Trust's reference to "no prior liens" was incorrect when she presented it to Pratt at closing.*

64. Suver's arguments presented to this Court that it was not his obligation to pay the IRS lien could not have been successfully maintained at the temporary injunction hearing if the Deed of Trust had not been altered. *The Deed of Trust could not have been altered prior to recording,* [sic] *if San Jacinto had recorded the document instead of giving it to Suver to record.*

65. Suver and Borchardt *were acting in concert with each other* in connection with the preparation for and conducting of the closing between Suver and Pratt . . . .[4]

---

[4] The trial court also made various findings of fact regarding spoliation by San Jacinto. *See Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) (explaining spoliation as the deliberate destruction of, failure to produce, or failure to explain the non-production of relevant evidence, which, if proved, may give rise to a presumption that the missing evidence would be unfavorable to the spoliator). In short, the trial court found that San Jacinto was aware of Pratt's potential claims against it as early as May 2005, but despite that

(Emphasis added.)

At trial, Pratt's proof of her attorney's fees consisted of bills for fees and costs incurred prior to adding San Jacinto as a party, which after removing certain costs not attributable to this case, amounted to $55,289. Moreover, Pratt's counsel confirmed that the attorney's fees Pratt was seeking "were attributable to the actions of Mark Suver." In other words, the attorney's fees sought by Pratt were those incurred defending against the wrongful injunction obtained by Suver as a result of San Jacinto's failure to properly prepare and then record the closing documents.

In its reply brief, San Jacinto argues that the equitable exception to the general rule disallowing attorney's fees in the absence of an actual damages award should not apply here because the fees were not incurred in prior litigation but, instead, in the instant suit. *See Oscar M. Telfair, III, P.C. v. Bridges*, 161 S.W.3d 167, 170 (Tex. App.–Eastland 2005, no pet.). Although that might have been the procedural posture of some of the cases establishing this exception, *see id.*, we note that the *Baja* court faced a procedural situation almost identical to the one in this case,[5] and regardless, we do not believe the procedural posture of a case affects the logical basis of this rule. *See Baja Energy, Inc.*, 669 S.W.2d

knowledge, inexplicably lost and then failed to produce the file concerning Pratt and Suver's transaction. As a result, the trial court then made the following specific findings, which are not challenged by San Jacinto:

84.     The Court determines that if San Jacinto's file . . . had been produced, it would probably reflect that San Jacinto was aware that the documents they had prepared for the closing of this transaction were not sufficient to adequately reflect the terms agreed to by Suver and Pratt.

85.     The Court determines that if San Jacinto's file pertaining to this . . . closing had been produced, it would likely contain evidence that Suver and Borchardt were acting in concert with each other.

[5] In *Baja*, attorney's fees were awarded to the defendant as a measure of damages against a third-party defendant who had been brought into the lawsuit by the defendant (and third-party plaintiff) to answer for its wrongful acts that had contributed to the original claims filed by the plaintiff against the defendant. *See Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 837-38 (Tex. App.–Eastland 1984, no writ).

17

at 839 (holding that a defendant's "*wrongful act* authorizes a recovery of litigation expenses including attorney's fees and loss of time upon a basis of usages and principles of equity" (emphasis added)). Rather, the most relevant inquiry is whether the party who incurred the attorney's fees defending against an earlier lawsuit—here, Pratt defending and prosecuting her counterclaims against Suver's wrongfully-obtained injunction—incurred the fees as a result of the wrongful actions of the defendant—here, counter-defendant San Jacinto's breach of contract and deceptive trade practices, which allowed Suver to wrongfully obtain the injunction against which Pratt was required to defend. *See Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 341 (Tex. App.–San Antonio 1992, writ denied) (holding that "where the natural and proximate consequence of a wrongful act has been to involve a plaintiff in litigation with others, there may, as a general rule, be recovery in damages of the reasonable expenses incurred in such prior litigation"). Moreover, we will not foreclose this avenue of relief to Pratt who was entitled under the rules of procedure to bring her claims against San Jacinto in the lawsuit originally filed by Suver. *See* Tex. R. Civ. P. 38(a) (prescribing when a defendant may bring in a third party); *see also In re Martin*, 147 S.W.3d 453, 457 (Tex. App.–Beaumont 2004, pet. denied) (holding that third-party practice "rests on the concept of judicial efficiency and the policy of providing full and adequate relief to the parties" (internal citation omitted)).

We thus conclude that the trial court did not err in awarding attorney's fees to Pratt as a form of damages against San Jacinto. As discussed previously in this opinion, San Jacinto, through its agent Borchardt, represented to Pratt that the closing documents would reflect her agreement with Suver, in particular with regard to payment of the delinquent taxes. San Jacinto did not keep its promise. Instead, it prepared documents that omitted

18

information crucial to the transaction. Then, despite its promise to record the documents, San Jacinto handed the documents over to Suver, who took the opportunity to alter the documents before recording them. Armed with the inaccurate and altered documents, Suver was able to obtain a temporary restraining order and temporary injunction, against which Pratt was forced to defend. And perhaps most importantly, as the trial court stated in its uncontested findings of fact, Borchardt "acted in concert" with Suver to accomplish these wrongful acts. Suver specifically chose Borchardt to act as the closing officer. Borchardt knew of the agreement between Suver and Pratt but failed to convey the information to San Jacinto's attorney for inclusion in the closing documents. The direct result of Borchardt's actions was the creation of the inaccurate documents, which were then employed by Suver to obtain his wrongful injunction.

Under the facts of this case, the equitable exception allowing for recovery of attorney's fees as damages is particularly appropriate—San Jacinto's wrongful acts, punctuated by its actions in concert with Suver, enabled Suver's wrongful injunction and caused Pratt to incur substantial attorney's fees defending and prosecuting her counterclaims against Suver. *See Baja Energy, Inc.*, 669 S.W.2d at 839. In sum, the trial court's conclusions of law were supported by the uncontested findings of fact previously described and were legally correct under the equitable principle allowing for attorney's fees as damages where a party is forced to defend a lawsuit as a result of the bad acts of the defendant. *See Massey*, 35 S.W.3d at 701; *GXG, Inc.*, 977 S.W.2d at 424; *see also Quick*, 270 S.W.3d at 181; *Colmenero*, 2008 WL 4938277, at *4. San Jacinto's fourth issue is overruled.

19

Having affirmed the trial court's conclusions on attorney's fees as an award of damages, we need not reach San Jacinto's remaining issues contesting the trial court's conclusions as awards of attorney's fees.[6] *See* TEX. R. APP. P. 47.1.

## B. Suver's Issues

### 1. Ad Valorem Tax Lien

In his first issue, Suver argues that the trial court erred in nullifying his ad valorem tax lien against Pratt. Prior to closing, Pratt executed and Suver recorded with Nueces County a document entitled "Affidavit of Transfer of Tax Lien." Suver contends that the document transferred the lien held by Nueces County to him and that, because the lien was never properly released, the trial court erred in nullifying the document. The premise of Suver's argument is flawed, however. The thrust of Suver's argument appears to be aimed at preserving a lien related to the delinquent ad valorem taxes he alleges still exists in his favor against Pratt. However, in his brief, Suver expressly disclaims any challenge to the findings of fact issue by the trial court, which we conclude were supported by the evidence and not erroneous as a matter of law and which provide, in relevant part, that:

> 20. Sometime prior to March 23, 2004, Suver obtained Pratt's signature on a document titled "Affidavit of Transfer of Tax Lien," admitted at trial as Plaintiff's Exhibit 4 ("PX-4").
>
> . . . .
>
> 22. Suver represented to Pratt that –

---

[6] By its fifth issue, San Jacinto complains that the trial court erred in holding it liable for the attorney's fees Pratt incurred because Pratt failed to prove that she incurred fees as a result of defending against San Jacinto, as opposed to Suver. In its sixth issue, San Jacinto argues that the trial court erred in holding it liable for Pratt's attorney's fees for underlying claims that do not permit recovery of attorney's fees. Finally, San Jacinto contends by its seventh issue that the trial court erred in failing to segregate fees between recoverable and unrecoverable claims.

a. PX-4 was a document used to facilitate closing.

b. PX-4 was a document used to establish to the satisfaction of San Jacinto that an agreement had been made for payment of the delinquent ad valorem taxes.

. . . .

25. It was never intended that PX-4 was to be used as a document to transfer a tax lien held by Nueces County to Suver.

26. With respect to PX-4, the intention of Pratt and Suver was that, effective upon closing, the terms and obligations contained in PX-4 would merge into the closing documents and no longer be effective, as Suver was assuming the obligation to pay all taxes referenced by PX-4.

Because we are bound by the preceding findings of the trial court, we are unpersuaded by Suver's argument that he still holds a lien on the property in question—no lien was ever created by the document in question. *See Taylor*, 126 S.W.3d at 717 (holding that unchallenged findings of fact are binding on the appellate court unless the contrary is established by appellant as a matter of law or there is no evidence to support the finding). Suver's first issue is overruled.

**2. IRS Tax Lien**

By his second issue, Suver appears to proclaim his intention to foreclose a lien he supposedly holds on the property for paying $50,000 of Pratt's federal income tax delinquency. However, by this issue, Suver does not complain of any error by the trial court or ask this Court for any relief. *See Pac. Employers Ins. Co. v. Dayton*, 958 S.W.2d 452, 455 (Tex. App.–Fort Worth 1997, pet. denied) (holding that a mere abstract proposition of law or general complaint is "too general and indefinite to merit our review"); *see also* TEX. R. APP. P. 38.1(i), (j). Finding no controversy to resolve in Suver's second

21

issue, we overrule it. *See Dayton*, 958 S.W.2d at 455 (overruling appellant's issue where the court was "unable to discern any specific complaint regarding any action, inaction, or ruling of the trial court"); *see also* TEX. R. APP. P. 47.1.

## IV.  CONCLUSION

Having overruled all of San Jacinto and Suver's issues, we affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 17th
day of December, 2009.